891 P.2d 871

**STATE of Arizona, ex rel. Roderick G. McDOUGALL, Phoenix City Attorney, Petitioner–Appellee,**

v.

**The Honorable N. Pike JOHNSON, Magistrate of the City Court of Phoenix, Arizona, Respondent–Appellant,**

**Lilli I. FOSTER, Respondent and Real Party in Interest–Appellant.**

No. 1 CA–CV 92–0230.

Court of Appeals of Arizona, Division 1, Department D.

July 14, 1994.

Review Denied March 21, 1995.

Roderick G. McDougall, Phoenix City Atty. by Gregory L. Hanchett, Asst. City Prosecutor, Phoenix, for petitioner-appellee.

Richard D. Coffinger, Glendale, for respondent and real party in interest-appellant.

## OPINION

McGREGOR, Judge.

The issues raised in this appeal are (1) whether a defendant can utilize Arizona Revised Statutes Annotated ("A.R.S.") section 28–695.A (Supp.1993) to offer into evidence the results of a test on a retained breath sample and (2) whether a defendant can satisfy the foundational requirements of section 28–695.A without providing the testimony of the person who tested the retained breath sample.

### I.

On October 4, 1991, Phoenix police officer K. Krogh arrested Foster and charged her with driving "under the influence of intoxicating liquor" and having "an alcohol concentration of 0.10 or more within two hours of driving," in violation of A.R.S. sections 28–692.A.1 and A.2 (Supp.1993).[1] Officer Krogh informed Foster of the implied consent law. *See* A.R.S. § 28–691 (Supp.1993). After receiving Foster's consent, Officer Krogh, a Department of Health Services (DHS) certified intoxilyzer operator, administered two intoxilyzer tests, using a DHS certified intoxilyzer and a DHS approved operational checklist. The results from the two tests indicated that Foster had a blood alcohol concentration of 0.123 and 0.116, respectively.

Officer Krogh then informed Foster of her right to receive a breath sample for independent testing. *See Baca v. Smith,* 124 Ariz. 353, 356, 604 P.2d 617, 620 (1979) ("when requested, the police must take and preserve a separate [breath] sample for the suspect by means of a field collection unit"). At Foster's request, Officer Krogh captured a sample of her breath, known as a "retained" or "second" breath sample, using a DHS approved field collection unit. Officer Krogh held a DHS permit to operate the collection unit and followed a DHS approved operational checklist for collecting second samples.

As required by the checklist, Officer Krogh observed Foster for twenty minutes prior to collecting the sample.

Foster took her second sample to Forensic Science Services, Inc., a private laboratory. Lucien C. Haag, who held an analyst's permit from DHS,[2] tested two portions of Foster's second sample on a DHS approved breath testing device.[3] The results of Haag's analysis indicated that Foster's blood alcohol concentration was 0.099 following her arrest. Haag summarized his analysis and findings in a report and retained a copy of the report, as required. Ariz.Admin.Code R9–14–408.-C.4 (1993).

Prior to trial, Foster disclosed her plan to offer the results of Haag's analysis into evidence without calling Haag to testify. The State moved, *in limine,* to preclude evidence of Haag's analysis unless he testified. Following a hearing, the municipal court denied the State's motion. The State then filed a petition seeking special action relief in superior court. The superior court, after holding its own hearing, accepted jurisdiction of the State's petition for special action and reversed the municipal court's denial of the State's motion. Foster now appeals. This court has jurisdiction pursuant to A.R.S. sections 12–120.21.A.1 (1992), 12–2101.B (Supp. 1993), and Rule 8(a), Arizona Rules of Procedure for Special Actions.

### II.

Foster contends the superior court erred in concluding that she could not satisfy the foundational requirements of section 28–695 without providing the testimony of the person who analyzed the retained breath sample. We are not bound by the superior court's conclusions of law and are free to draw our own legal conclusions. *Gary Outdoor Advertising Co. v. Sun Lodge, Inc.,* 133 Ariz. 240, 242, 650 P.2d 1222, 1224 (1982).

---

1. Officer Krogh also charged Foster with "speed not reasonable and prudent," in violation of A.R.S. section 28–701.A (1989); with "no proof of insurance," in violation of A.R.S. section 28–1253.D (Supp.1993); and with "registration not in vehicle," in violation of A.R.S. section 28–305.D (1989).

2. *See* A.R.S. § 28–695.D.3 (Supp.1993); Ariz.Admin.Code R9–14–405 (1993).

3. Haag analyzed Foster's second sample on a Mark IV Gas Chromatograph Intoximeter adapted for indium capsule analysis.

■ A proponent of a breath test, whether the state or a DUI defendant, can offer the test into evidence by utilizing either the statutory method, established in section 28–695,[4] or the rules of evidence method, governed primarily by Rule 702, Arizona Rules of Evidence.[5] *State ex rel. Collins v. Seidel,* 142 Ariz. 587, 591, 691 P.2d 678, 682 (1984). In deciding whether a proponent has established the requisite foundation for admission of a breath test, courts apply the same evidentiary standard to both parties. *Id.* at 589, 691 P.2d at 680 ("The constitution gives a defendant the right to have exculpatory evidence admitted, but does not relieve him of the burden of meeting the evidentiary standards set for all parties.").

■ Under the rules of evidence method, the proponent of a breath test must show, through a qualified expert, that (1) the test is generally accepted in the scientific community and (2) the test was conducted properly and the results were measured and recorded accurately. *Id.* at 590, 691 P.2d at 681. In comparison, under the statutory method a proponent can offer the results of a breath test by satisfying the foundational requirements of section 28–695.A, which provides:

A. The results of a breath test administered for the purpose of determining a person's alcohol concentration are admissible as evidence in any trial, action or proceeding upon establishing the following foundational requirements:

1. The test was performed using a quantitative breath testing device approved by the department of health services. A properly authenticated certification by the department of health services is sufficient to establish this requirement.

2. The operator who conducted the test possessed a valid permit issued by the department of health services to operate the device used to conduct the test.

3. Duplicate tests were administered and the tests results were within 0.02 alcohol concentration of each other or an operator observed the person charged with the violation for twenty minutes immediately preceding the administration of the test.

4. The operator who conducted the test followed an operational checklist approved by the department of health services for the operation of the device used to conduct the test. The testimony of the operator is sufficient to establish this requirement.

5. The device used to conduct the test was in proper operating condition. Records of periodic maintenance which show that the device was in proper operating condition at a time before and after the test are admissible in any proceeding as prima facie evidence that the device was in proper operating condition at the time of the test. Such records are public records.

■ In essence, the statutory method allows a proponent to admit scientific evidence without qualifying a witness as an expert, as required by the rules of evidence method. *Id.* A proponent can admit evidence of a breath test

simply by showing that the test was administered with an approved device, by an operator holding a permit, who followed methods approved by DHS and complied with procedures adopted by DHS.... The reliability and accuracy of the results is vouched for by demonstrating compliance with the statute and the procedures adopted by DHS.

*Id.* at 591, 691 P.2d at 682.

Although the statutory method allows a proponent to offer the results of a breath test without an expert witness, judicial decisions interpreting the requirements of section 28–695.A consistently have held that the operator must testify. *Id.; Fuenning v. Superior Court,* 139 Ariz. 590, 604, 680 P.2d 121, 135 (1983). In *Fuenning,* the supreme court stated:

All that would be needed "live" would be testimony that the officer who had admin-

---

4. At the time of Foster's arrest, section 28–695 was numbered as A.R.S. section 28–692.03.

5. Arizona Rule of Evidence 702 provides:
Testimony by Experts: If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

istered the test was aware of such procedures, had followed them and had utilized the written checklist of procedures in performing the tests.

139 Ariz. at 604, 680 P.2d at 135. Further, because the statutory method permits admission of a breath test without testimony from an expert witness, *"the requirements of the statute must be scrupulously met* so that there will be a uniform, statewide basis of testing to vouch for accuracy and reliability." *State ex rel. Collins,* 142 Ariz. at 591, 691 P.2d at 682 (emphasis added).

### A.

The State contends that a defendant can never utilize the statutory method to offer into evidence the test results of a retained breath sample. Specifically, the State argues, that a defendant can never comply with section 28–695(A)(3), which requires a showing that either "[d]uplicate tests were administered and the tests results were within 0.02 alcohol concentration of each other" or "an operator observed the person ... for twenty minutes immediately preceding the administration of the test." The State argues that a defendant cannot satisfy either prong of subsection three because a defendant receives only one breath sample and the operator who analyzes the sample does not observe the defendant until well after the sample is collected. We disagree.

The purpose of the foundational requirement in subsection three is to establish the reliability of the test results. *State v. Moreno,* 173 Ariz. 471, 472, 844 P.2d 638, 639 (App.1992). If multiple tests are conducted, reliability is established by showing that the test results are within a 0.02 blood alcohol concentration of each other. *Id.* If only one test is administered, reliability is established by the twenty minute pre-test observation period, the purpose of which is to prevent the defendant from putting anything into her mouth and to prevent an artificially high test result due to mouth alcohol. *Id.; State ex rel. Dean v. City Court,* 163 Ariz. 510, 512, 789 P.2d 180, 182 (1990).

■ After considering the purpose of subsection three, we conclude that a defendant can satisfy this section by showing that

the officer who collected the breath sample observed the defendant for twenty minutes prior to collecting the sample, even though a second "operator" analyzed the sample. As long as the collecting operator, in this case Officer Krogh, follows the DHS operational checklist, the reliability of the test will be maintained. The State's interpretation of subsection three does nothing to increase the reliability of the test results, and operates only to prevent a defendant from utilizing the statutory method. We think that approach is inconsistent with the statutory purpose. We therefore hold that Foster can establish the foundational requirement of subsection three by offering into evidence the testimony of Officer Krogh.

### B.

■ Foster contends that she can satisfy the foundational requirements of subsection four of section 28–695.A without providing Haag's testimony. Foster argues that she can comply with subsection four, which requires her to establish that the operator followed an approved operational checklist, by (1) having Officer Krogh testify that he used a DHS approved field collection unit and that he followed a DHS approved operational checklist and (2) providing documentary evidence that Haag followed a DHS approved operational checklist, including Haag's DHS approved operational checklist, Haag's worksheet, and periodic maintenance records on Haag's testing unit. To bolster her argument, Foster contends these documents are "public records" because Haag filed his operational checklist with DHS and because he was required by regulation to maintain his worksheet and the periodic maintenance records. *See* Ariz.Admin.Code R9–14–408.C (1993). As a result, Foster argues, the documents are self-authenticating and fall within the public records exception to the hearsay rule. We disagree.

Foster's plan to provide the testimony of the operator collecting the sample, Officer Krogh, and the documents alleging that Haag followed an approved checklist does not "scrupulously" satisfy the requirement of subsection four. Testing a second breath

sample involves two critical steps, collecting the sample and then analyzing that sample. To satisfy subsection four, a defendant must show that the operator(s) conducting each portion of the test followed approved procedures. Thus, providing the testimony of Officer Krogh alone does not satisfy Foster's burden.

■ Additionally, the documents Foster plans to offer into evidence to establish that Haag followed an approved operational checklist are inadmissible without his testimony. Even assuming arguendo that Foster's documents comply with the authentication rules, authenticated documents may still be excluded by some other bar to admission. See Ariz.R.Evid. 901 and 902; Moris K. Udall et al., *Arizona Law of Evidence* § 111, at 222 (3rd ed. 1991). Here, the proffered documents, specifically Haag's analysis and the periodic maintenance reports, constitute hearsay because they are "statement[s], other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ariz.R.Evid. 801(c).

■ Contrary to Foster's argument, the documents do not fall within the public records exception to the hearsay rule, which applies only to reports of public offices or agencies. Ariz.R.Evid. 803(8).[6] Haag's report is not from a public agency. Further, the fact that a private individual is required to prepare and maintain a document does not transform the document into a public record. *See Brown v. Sierra Nevada Memorial Miners Hosp.*, 849 F.2d 1186, 1190 (9th Cir.1988) (the assumption supporting the public records exception, that an administrative body's findings are trustworthy, is substantially weakened when extended to sources outside the agency from which the agency culls the information for its report). Therefore, the documents Foster plans to offer are inadmissible unless Haag testifies as to the veracity of the contents of the documents. *See* Ariz. R.Evid. 802.

Finally, we are not convinced, as Foster argues, that requiring her to procure the testimony of the operator is unduly burdensome. Foster is not required to qualify the operator as an "expert witness," and the operator must only testify that he or she was aware of the DHS approved operational checklist and utilized the checklist in conducting the test. *Fuenning*, 139 Ariz. at 604, 680 P.2d at 135; *State ex rel. Collins*, 142 Ariz. at 591, 691 P.2d at 682. Moreover, Foster's burden is no greater than that imposed upon the State. As the superior court recognized,

> judicially expanding the very technical foundation provisions of A.R.S. section 28–69[5] could result in very loose and variable standards of admission of breath test results; and in many other defendants feeling that injustice was done in their cases, if trial courts started letting the State's breath tests into evidence without requiring any testimony about the procedures followed in administering the test.

Therefore, we conclude that to satisfy the foundational requirements of section 28–695.A, Foster must provide testimony from Haag, the operator who analyzed the retained breath sample.

### III.

For the reasons stated above, we affirm.

CLABORNE, P.J., and GERBER, J., concur.

---

6. Arizona Rule of Evidence 803(8) provides:

> (8) Public records and reports. Unless the sources of information or other circumstances indicate lack of trustworthiness, records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law.