■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEVIN S. ROGERS, Appellant. [780 NYS2d 393]—

Kane, J. Appeals (1) from a judgment of the Supreme Court (Lamont, J.), rendered November 21, 2000 in Albany County, upon a verdict convicting defendant of the crimes of rape in the first degree and sodomy in the first degree, and (2) by permission, from an order of said court (McNamara, J.), entered May 12, 2003 in Albany County, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, after a hearing.

In April 1999, defendant was arraigned on a two-count indictment charging him with crimes related to a sexual assault. A superceding indictment charged defendant with two counts each of rape and sodomy, by force or while the victim was incapable of consent by virtue of being physically helpless. Prior to the September 2000 trial, defendant twice moved to dismiss the indictment on speedy trial grounds, each time unsuccessfully. The jury found defendant guilty of rape and sodomy while the victim was incapable of consent, but acquitted on the forcible rape and sodomy charges. Supreme Court sentenced defendant to consecutive sentences of 25 years in prison for each count. Defendant filed a CPL 440.10 motion to vacate the judgment of conviction based on alleged ineffective assistance of counsel. After a hearing, the court denied that motion. Defendant appeals from his judgment of conviction and the order denying his CPL 440.10 motion.

Defendant was not denied his right to a speedy trial (see US Const 6th, 14th Amends; CPL 30.20, 30.30). The People announced readiness soon after arraignment and all postreadiness delay was occasioned by pretrial motions, decisions, hearings and waiting for Supreme Court's response. Only the times between indictment and arraignment and between granting of a blood test and submission of that order were chargeable to the People (see CPL 30.30), time which amounted to no more than 38 days. The fact that the People continued to gather evidence after announcing readiness did not render their readiness illusory (see People v Rouse, 4 AD3d 553, 556 [2004]). The People could legitimately be ready to prosecute the lesser charges under the original indictment while seeking additional evidence to charge defendant with more serious crimes in the superceding indictment.

In evaluating an alleged CPL 30.20 statutory speedy trial violation or a violation of the constitutional due process right to prompt prosecution, the court must engage in a sensitive weighing of certain factors: "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4)

whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay" (*People v Taranovich*, 37 NY2d 442, 445 [1975]; *see People v Vernace*, 96 NY2d 886, 887 [2001]). Delay, by itself, is insufficient to constitute a speedy trial violation (*see People v Marrero*, 259 AD2d 836, 837 [1999], *lv denied* 93 NY2d 927 [1999]). While the delay here was more than 17 months, certainly an extended period, it was occasioned in part by defendant's pretrial motions, including a review of the grand jury minutes, extensive omnibus motions and two speedy trial motions (*see People v Congregational Khal Chaisidei Skwere*, 232 AD2d 919, 922 [1996], *lv denied* 89 NY2d 984 [1997]).* Delay was further occasioned by the availability of judicial resources, which does not weigh as heavily on the prosecution as does prosecutorial inaction (*see id.* at 922; *People v Mobley*, 206 AD2d 681, 682 [1994], *lv denied* 84 NY2d 870 [1994]). The charges here, four class B felonies, were serious crimes. Although defendant was incarcerated for the entire period, for a portion of that time defendant was also incarcerated pending and pursuant to a conviction of another crime (*see People v Mobley, supra* at 682). Defendant failed to show any prejudice or harm to his defense as a result of the delay (*see People v Pratt*, 303 AD2d 843, 844 [2003], *lv denied* 99 NY2d 657 [2003]). Reference to Supreme Court's disposition of other criminal cases prior to defendant's, including cases involving defendants who were not incarcerated, does not require dismissal despite the court's failure to give this case preference pursuant to CPL 30.20 (2) (*see People v Cunningham*, 222 AD2d 727, 729 [1995], *lv denied* 87 NY2d 1018 [1996]; *People v Kindlon*, 217 AD2d 793, 794 [1995], *lv denied* 86 NY2d 844 [1995]). Balancing all of the *Taranovich* factors, defendant was not deprived of his constitutional or statutory right to a speedy trial.

Supreme Court properly denied defendant's CPL 440.10 motion after a hearing. Meaningful representation by counsel includes the conveyance of accurate information regarding plea negotiations, including relaying all plea offers made by the prosecution (*see People v Sherk*, 269 AD2d 755 [2000], *lv denied* 95 NY2d 804 [2000]; *People v Reed*, 152 AD2d 481, 481 [1989]). Defendant had the burden to show that a plea offer was made, that defense counsel failed to inform him of that offer, and that

---

* Two motions were pending for a combined period in excess of 9$^1$/$_2$ months prior to determination. While these periods were lengthy, one set of defendant's motion papers with exhibits was 485 pages and contained hundreds of case citations.

he would have been willing to accept the offer. At the hearing, the prosecutor testified that no plea offer was ever made, partly because defense counsel related that defendant would not accept a plea to any sexual offense and the prosecution would require any plea to include such an offense. Defense counsel testified similarly and stated that he acted at defendant's direction. While defendant testified that he never put any limits on plea negotiations and would have accepted any plea giving him a short sentence, the remaining witnesses' testimony either supported or was not inconsistent with defense counsel's statements. As only defendant's self-serving, after-the-fact testimony supported his motion, the court appropriately weighed the testimony and denied the motion.

A report giving the results of testing on the victim's blood was improperly admitted as a business record. Unlike *People v Cratsley* (86 NY2d 81, 90 [1995]), where an IQ report was generated by a developmental disabilities organization's outside consultant to classify an individual for placement or treatment, thus supplying "indicia of reliability characteristic of a business record" (*id.* at 91; *see Rodriguez v Triborough Bridge & Tunnel Auth.*, 276 AD2d 769, 770 [2000], *appeal dismissed* 96 NY2d 814 [2001]), the report here was requested by and prepared for law enforcement for the purpose of prosecution. Although the report was generated by a private lab that conducted the tests and such tests by outside labs are regularly relied upon by the State Police because they do not perform such testing themselves, papers or reports from other entities do not qualify as business records merely because they are regularly filed with the State Police's records (*see People v Cratsley, supra* at 90). Documents prepared for litigation lack the indicia of reliability necessary to invoke the business records exception to the hearsay rule.

Defendant's 6th Amendment right to cross-examine witnesses was violated by admission of the blood test report. Defendant had the right to cross-examine witnesses regarding the authenticity of the sample for foundation purposes. He also had the right, pursuant to the Confrontation Clause, to cross-examine regarding the testing methodology (*see* US Const 6th Amend; *Crawford v Washington*, — US —, 124 S Ct 1354 [2004]). Because the test was initiated by the prosecution and generated by the desire to discover evidence against defendant, the results were testimonial (*see Crawford v Washington, supra*). The test result established the victim's blood alcohol content at the time the blood was drawn and was the basis of expert testimony extrapolating her blood alcohol content at the time of the al-

leged rape. This was especially significant here, as the victim's intoxication level directly related to her capability to consent. Admission of the blood test results without the ability to cross-examine the report's preparer was a violation of defendant's rights under the 6th Amendment's Confrontation Clause, which we cannot deem harmless (*see People v Crimmins*, 36 NY2d 230, 241-242 [1975]). Therefore, we must reverse defendant's conviction and remit for a new trial.

Based on our remittal of this matter, we will briefly address defendant's other contentions which may arise again in further proceedings. A sexual assault nurse examiner conducted a physical examination of the victim. Supreme Court did not abuse its discretion in permitting this witness's testimony, based on her training and experience, that the victim's injuries were consistent with a forcible sexual encounter and not consistent with consensual sex (*see People v Morehouse*, 5 AD3d 925, 928-929 [2004]; *People v Munroe*, 307 AD2d 588, 591 [2003], *lv denied* 100 NY2d 644 [2003]). The court properly limited defense counsel's cross-examination of the nurse examiner because he failed to make a valid offer of proof (*see People v White*, 261 AD2d 653, 656 [1999], *lv denied* 93 NY2d 1029 [1999]); it also permitted the defense to present related evidence later in the trial when a proper basis was established.

The victim's hospital records were properly admitted into evidence. Although statements made by the victim to medical personnel were hearsay, such statements are admissible under the business records exception (*see* CPLR 4518 [a]), as long as they are germane to the patient's subsequent medical treatment and diagnosis (*see People v Bailey*, 252 AD2d 815, 815-816 [1998], *lv denied* 92 NY2d 922 [1998]). The sexual assault information sheet had a dual purpose of investigation and treatment of the victim's potential physical and psychological injuries. Because the history was germane to treatment, it falls within the traditional business records exception (*see Crawford v Washington, supra*), and the hearsay was therefore admissible.

The bottle containing Invigorate was properly admitted into evidence. While Invigorate was a legal, over-the-counter product at the time, a chemist and toxicologist established that Invigorate contains base ingredients similar to the date-rape drug GHB and the body can convert Invigorate to GHB. Testimony established that the victim had very little recollection of the night after having a drink with defendant, she did not act as she normally did when intoxicated, she was barely able to walk and mostly incoherent, she was still groggy late the next morning, amnesiac experiences under these situations are

possible signs of drug-facilitated sexual assault, and GHB may cause people to experience amnesia, lack of inhibition, deep sleep or unconsciousness. Defendant purchased Invigorate around the time of this incident, he regularly carried it with him when he worked out, and he worked out earlier that day. Although no one saw defendant put anything in the victim's drink, there was no proof that he had the substance with him that night, and no drugs were found in the victim's blood or urine, those circumstances affect the weight of the evidence not its admissibility.

Cardona, P.J., Mercure and Rose, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the Supreme Court for a new trial. Ordered that the order is affirmed.

