929 So.2d 4 (2005)
Lorenzo Cephus JOHNSON a/k/a Lorenzo Ceatus Johnson a/k/a Clarence Flowers, Appellant,
v.
STATE of Florida, Appellee.
No. 2D04-3460.
District Court of Appeal of Florida, Second District.
December 30, 2005.
*5 James Marion Moorman, Public Defender, and Judith Ellis, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Marilyn Muir Beccue, Assistant Attorney General, Tampa, for Appellee.
VILLANTI, Judge.
Lorenzo Cephus Johnson challenges, on Confrontation Clause grounds, the admission of a Florida Department of Law Enforcement (FDLE) lab report establishing the illegal nature of substances he possessed when the person who performed the test did not testify. We conclude the lab report was testimonial hearsay admitted despite the declarant's availability to testify; therefore, we reverse Johnson's convictions for possession of cocaine, introduction of contraband into a detention facility, and possession of marijuana. We affirm without comment Johnson's conviction for obstructing an officer without violence.
Johnson was charged with and convicted of possession of cocaine (count 1), introduction of contraband (marijuana) into a detention *6 facility (count 3), obstructing an officer without violence (count 4), and possession of marijuana (count 5). To support the two possession charges and the introduction of contraband charge, the State introduced the testimony of the officers who performed the presumptive field tests. Additionally, the State sought to introduce the result of an FDLE lab test performed by Anna Deakin, through her supervisor, James Silbert. Silbert did not conduct this particular test, but he was able to testify about the general procedures used by FDLE in preparing such reports. Johnson objected, arguing that the lab report was inadmissible hearsay and that its admission without the presence of the person who prepared the report violated his Sixth Amendment right to confront his accuser.
The State explained that Deakin, now an FBI employee, was in Virginia. When the trial court briefly recessed at 4:15 p.m. to allow the attorneys time to research the admissibility of the report, the assistant state attorney telephoned Deakin, who said she was willing to fly down the next morning to testify. Nevertheless, the State's position was that it was "an unreasonable expense and inconvenience" to fly the witness in for the trial. The trial court initially appeared willing to continue the case to the following day so that Deakin's presence could be secured. However, as the attorneys were bantering over this issue, the trial court abruptly announced, "[The State] can make this call. It doesn't offend me one way or the other. If [the State does not] want to bring her inI am prepared to rule it's admissible." When the State accepted the trial court's offer, the lab report was admitted as a business record.
Johnson contends the admission of this lab report violated his right to confront his accuser guaranteed by the Sixth Amendment. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."). Whether a hearsay statement admitted at trial violates the Sixth Amendment's Confrontation Clause is controlled by Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In Crawford, the Supreme Court did away with the reliability analysis set forth in Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), in cases involving testimonial hearsay. The Court established a bright-line rulewhen testimonial hearsay is introduced against a defendant, it violates the Confrontation Clause unless the witness is unavailable and the defendant had a prior meaningful opportunity to cross-examine that witness.
In jettisoning its prior Roberts analysis, the Court examined the roots of the Confrontation Clause, a "bedrock procedural guarantee [that] applies to both federal and state prosecutions," and the evils it sought to prevent. Crawford, 541 U.S. at 42, 124 S.Ct. 1354. The Supreme Court also applied a textual analysis, explaining that the clause itself references "witnesses" against the accused and a "witness" is someone who "bear[s] testimony. . . . `Testimony,' in turn, is typically `[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" Id. at 51, 124 S.Ct. 1354 (quoting 1 Noah Webster, An American Dictionary of the English Language (1828)). Using this definition, the Court distinguished between casual remarks and "formal statement[s] to government officers." Id. The formal statements made to government officers encompass testimonial statements and are specifically the type of statements the Framers intended to be subject to the Confrontation Clause. Id. at 53-54, 124 S.Ct. 1354.
*7 Despite providing the above generic definition, the Court "le[ft] for another day any effort to spell out a comprehensive definition of `testimonial.'" Id. at 68, 124 S.Ct. 1354. It did provide a noncomprehensive list of testimony that would be considered testimonial: testimony at a preliminary hearing, testimony in front of a grand jury or at a trial, and testimony that results from police interrogation. Id. It also noted, in dicta, that certain hearsay statements are by their nature nontestimonialsuch as business records. Id. at 56, 124 S.Ct. 1354. The problem that comes into play in a case in which an FDLE lab report is admitted as a business record is that, technically, an FDLE lab report is a record kept in the regular course of business but, by its nature, it is intended to bear witness against an accused. Cf. Baber v. State, 775 So.2d 258, 262 (Fla.2000) (explaining, under pre-Crawford analysis, that hospital record of blood test taken for medical purposes qualifies as a business record and does not violate Confrontation Clause because the "hospital . . . did not have an interest in the outcome of the future criminal case lodged against the defendant").
Thus, despite Crawford's suggestion that all business records are nontestimonial, we hold that an FDLE lab report prepared pursuant to police investigation and admitted to establish an element of a crime is testimonial hearsay even if it is admitted as a business record. Recent decisions from the First and Fourth Districts provide illustrative support for our holding. In Belvin v. State, 30 Fla. L. Weekly D1421, 2005 WL 1336497 (Fla. 4th DCA June 8, 2005), the Fourth District determined that a breath-test affidavit written by a technician who did not testify was testimonial hearsay because its purpose was clearly for use at trial. It also rejected the State's argument that the affidavit was a public record and not encompassed by the definition of testimonial hearsay. Likewise, in Shiver v. State, 900 So.2d 615, 618 (Fla. 1st DCA 2005), the First District concluded a breath-test affidavit was testimonial hearsay because "the only reason the affidavit was prepared was for admission at trial." See also People v. Rogers, 8 A.D.3d 888, 780 N.Y.S.2d 393 (2004) (determining a private lab result requested by and prepared for law enforcement was both inadmissible as business record and testimonial hearsay violating Confrontation Clause because its purpose was to provide evidence against the defendant).
Similarly, even if an FDLE lab report is admitted as a business record, its purpose is clearly to establish an element of the crime at trial. This is particularly so because presumptive tests conducted by a field officer alone are not sufficient to establish a prima facie case; FDLE reports are often vital to the State's prosecution.[1]See L.R. v. State, 557 So.2d 121 *8 (Fla. 3d DCA 1990) (finding that a positive presumptive test for cocaine was insufficient to establish a prima facie case of possession). The business records exception may have been the vehicle for admitting the report, but the vehicle does not determine the nature of the out-of-court statement. The nature of the statement is one that is intended to lodge a criminal accusation against a defendantin other words, it is testimonial. The out-of-court statement does not lose its testimonial nature merely because it is contained in a business record.
Having concluded the FDLE report is testimonial hearsay, we now consider whether it was nevertheless admissible under Crawford's two-prong test of unavailability and prior meaningful opportunity to cross-examine the witness. We begin with whether the declarant, Deakin, was "unavailable" for Confrontation Clause purposes. We note that Crawford did not disturb the meaning of unavailability from its prior precedent, and we therefore consider whether this witness was unavailable according to that term under pre-Crawford decisions. According to Roberts, before a witness can be deemed unavailable, the State must make a good-faith showing of attempting to secure the witness. Although the State is not required to perform a futile act, if there is any "remote" chance the witness may be procured, it must go to reasonable lengths to procure the witness. Roberts, 448 U.S. at 74, 100 S.Ct. 2531. Here, the State did not go to reasonable lengths to procure Deakin's testimony; instead, it expressed a lack of desire to have her flown from Virginia at the State's expense, thus demonstrating its failure to appreciate that Johnson's constitutional rights were at stake. Deakin was physically able to come and expressed a willingness to come the very next day, but when the trial court gave the State the option of proceeding without her, the State elected to move the trial along without Deakin. That Deakin was willing to come and the State was willing to pay, if the court had ruled it was necessary, shows what reasonable measures the State could have taken to secure Deakin's presence beforehand. The existence of these reasonable measures establishes that Deakin was not unavailable. Therefore, this part of the Crawford test has not been met.
Because we conclude the State did not establish the witness was unavailable, we need not address whether Johnson had a prior meaningful opportunity to cross-examine her. Compare Blanton v. State, 880 So.2d 798 (Fla. 5th DCA 2004) (holding defendant's opportunity, though yet unexercised, to depose a witness satisfied Crawford) with Lopez v. State, 888 So.2d 693 (Fla. 1st DCA 2004) (determining defense attorney's right to depose witness was not for the purpose of adversarial testing but rather to gather information, and therefore any opportunity to cross-examine a witness through discovery depositions did not satisfy this portion of the Crawford test). Because Deakin's name did not appear on any discovery the State provided to Johnson, it appears that, exercised or not, Johnson probably had no opportunity even to depose her. We therefore reverse and remand for a new trial on counts one, three, and five in accordance with our opinion.
We also conclude that the issue presented by this case is a question of great public importance, and we certify to the supreme court the following question:
DOES THE ADMISSION OF A FLORIDA DEPARTMENT OF LAW ENFORCEMENT LAB REPORT ESTABLISHING THE ILLEGAL NATURE *9 OF SUBSTANCES POSSESSED BY A DEFENDANT VIOLATE THE CONFRONTATION CLAUSE AND CRAWFORD V. WASHINGTON, 541 U.S. 36, 124 S.CT. 1354, 158 L.ED.2D 177 (2004), WHEN THE PERSON WHO PERFORMED THE LAB TEST DID NOT TESTIFY?
Affirmed in part; reversed in part and remanded.
FULMER, C.J., and WALLACE, J., Concur.
NOTES
[1] We note that proof of the identification of contraband does not always require scientific tests. For instance, "the case law permits circumstantial evidence to be used to establish the identity of certain controlled substances such as marijuana and crack cocaine." Sheridan v. State, 850 So.2d 638, 641 (Fla. 2d DCA 2003) (citing Brooks v. State, 762 So.2d 879, 893-94 (Fla.2000)). As to the cocaine in Johnson's case, the only evidence identifying it was the field test and the lab report. None of the testifying officers related how they, as experts in drug identification, were able to recognize crack cocaine. The field test alone would have been insufficient to convict Johnson of cocaine possession. As to the marijuana, one officer testified that from his experience and training, he was able to recognize marijuana by its green leafy substance or texture. However, the admission of the lab report was not harmless error simply because there was evidence other than a positive field test identifying the marijuana. The erroneous introduction of the lab report, in violation of the Confrontation Clause, calls into question the result of all of Johnson's drug convictions.