160 P.3d 1143

**STATE of Arizona, Appellant,**

v.

**Troy Richard MOSS, Appellee.**

No. 1 CA–CR 05–0306.

Court of Appeals of Arizona, Division 1, Department D.

May 29, 2007.

Terry Goddard, Attorney General, By Randall M. Howe, Chief Counsel, Criminal Appeals Section and Andrew P. Thomas, Maricopa County Attorney, by Elizabeth B. Ortiz, Deputy County Attorney, Phoenix, Attorneys for Appellant.

James J. Haas, Maricopa County Public Defender, by Charles R. Krull, Deputy Public Defender, Karen M.V. Noble, Deputy Public Defender, Phoenix, Attorneys for Appellee.

## OPINION

GEMMILL, Judge.

¶ 1 The State appeals the trial court's pretrial order precluding the State's expert toxicologist from testifying to the results of tests of Defendant's blood performed by non-testifying witnesses and from offering opinions based in part on the test results. The trial court concluded that permitting this testimony from the State's expert would violate Defendant's constitutional right to confront the witnesses against him. We agree and therefore affirm.

### I.

¶ 2 Defendant Troy Richard Moss was charged with two counts of aggravated assault, two counts of endangerment, one count of possession or use of dangerous drugs, and one count of possession of drug paraphernalia.[1] Following the trial court's decision limiting the testimony of the State's expert, these counts were dismissed without prejudice on the State's motion.

¶ 3 The charges arose from an automobile accident allegedly caused by Moss running a red light in a stolen vehicle, which in turn caused serious injuries to or endangered the occupants of other vehicles. Law enforcement officers drew blood from Moss pursuant to a search warrant and sent the sample to a private laboratory in California to determine the presence of drugs. According to the State, the laboratory test revealed a methamphetamine level of 360 ng/ml and an amphetamine level of 63 ng/ml. The private laboratory ceased operating and the State could not locate the criminalists who performed the analysis of Moss's blood to testify

---

1. Moss was also charged with unlawful use of means of transportation. This count was severed. A jury found Moss guilty of that charge and he was sentenced to six years in prison. This court affirmed that conviction and sentence.

at trial.[2] The State sought to have Dr. Raymond Kelly, former director of the private laboratory, offer his opinion at trial that Moss was impaired by methamphetamine based on his review of the blood test results, the drug recognition expert evaluation, and the police reports. The State also intended to have Dr. Kelly testify to the blood test results themselves in lieu of testimony from the non-testifying criminalists.

¶ 4 In a pretrial motion, Moss sought to preclude Dr. Kelly from testifying to the results of the blood tests and from expressing any opinion based on those results. Moss argued that because Dr. Kelly did not perform the tests, such testimony would violate Moss's rights under the Confrontation Clause as clarified by the United States Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The State responded that Dr. Kelly's opinions relying on the results of blood tests that he did not personally conduct were offered pursuant to Rule 703 of the Arizona Rules of Evidence and did not violate the Confrontation Clause because the blood test results were neither hearsay nor "testimonial" under *Crawford.*

¶ 5 The trial court assumed for purposes of Moss's motion that the test results were facts or data of a type reasonably relied upon by experts in Dr. Kelly's particular field in forming opinions on whether a driver was under the influence of drugs and that Dr. Kelly's opinions would ordinarily be admissible under Rule 703 of the Arizona Rules of Evidence. The court concluded, however, that the report stating the results of Moss's blood tests was "testimonial" under *Crawford v. Washington.* The court further reasoned that "[a]lthough the [laboratory] report is not going to be offered as an exhibit at trial, the contents of that report will become known to the jury through the testimony of Dr. Kelly." The court found that such use of the test results would violate the right to confrontation and therefore the results were inadmis-

sible. The court granted Moss's motion to preclude the testimony of Dr. Kelly regarding the test results and any opinions based on the results, "unless the person who performed the analysis of the blood is called as a witness and is subject to cross examination."

¶ 6 After the dismissal without prejudice of the six counts affected by the trial court's ruling, the State timely appealed. We have jurisdiction under Arizona Constitution Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1) (2003) and 13–4032 (2001).

## II.

¶ 7 This court ordinarily reviews a trial court's ruling on the admissibility of evidence under an abuse of discretion standard. *State v. Ayala,* 178 Ariz. 385, 387, 873 P.2d 1307, 1309 (App.1994). We review the facts in the light most favorable to sustaining the trial court's ruling. *State v. Hyde,* 186 Ariz. 252, 265, 921 P.2d 655, 668 (1996). We deferentially review the trial court's factual findings and we independently review the trial court's legal conclusions. *State v. Gonzalez–Gutierrez,* 187 Ariz. 116, 118, 927 P.2d 776, 778 (1996); *see also State v. Ellison,* 213 Ariz. 116, 129, ¶ 42, 140 P.3d 899, 912 (2006) (confirming *de novo* review of challenges regarding admissibility under the Confrontation Clause); *State v. King,* 212 Ariz. 372, 375, ¶ 16, 132 P.3d 311, 314 (App.2006) (same).

¶ 8 To resolve this appeal, we must determine if the proposed testimony of Dr. Kelly is constitutionally barred by the Confrontation Clause. The State seeks to show that Moss was under the influence of drugs at the time of the accident. The presence of drugs in Moss's blood would be key evidence supporting the *mens rea* of recklessness for the offenses of aggravated assault and endangerment. *See* A.R.S. § 13–1201(A) (2001) (endangerment); A.R.S. § 13–1204 (Supp.2006)[3]

---

2. The record does not reveal whether the analysis of Moss's blood was performed by one criminalist or more than one. The written test report is not part of the record on appeal. In both the trial court and on appeal, the State has primarily used plural designations such as "criminalists." We will follow suit in this opinion.

3. We cite the current version of the applicable statute because it is the same, for purposes of these issues, as the version in effect at the time of these events.

and A.R.S. § 13–1203(A) (2001) (aggravated assault). Dr. Kelly's proposed testimony would convey the blood test results to the jury, and the test results would likely be understood by the jury as demonstrating the presence of methamphetamine in Moss's bloodstream at the time of the accident.

¶ 9 In 2004, the United States Supreme Court issued its landmark *Crawford* opinion expanding the right of an accused to confront his accusers. The Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 53–54, 124 S.Ct. 1354; U.S. Const. amend. VI ("[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him").[4]

¶ 10 *Crawford* overruled *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which had held that an unavailable witness's out-of-court statement may be admitted so long as it had adequate "indicia of reliability." *Id.* at 66, 100 S.Ct. 2531. The Court rejected judicial determinations of reliability in favor of actual confrontation and cross-examination:

> Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of "reliability." Certainly none of the authorities discussed above acknowledges any general reliability exception to the common-law rule. *Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation.* To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reli-

ability be assessed in a particular manner: by testing in the crucible of cross-examination. The Clause thus reflects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined.

*Crawford*, 541 U.S. at 61–62, 124 S.Ct. 1354 (emphasis added).[5] This constitutional right to cross-examine one's accusers—based not on rules of evidence or judicial notions of reliability—forms the foundation of our analysis in this opinion.

¶ 11 The State cannot produce the criminalists who actually performed the tests on the sample of Moss's blood. Moss has not had the opportunity to confront and cross-examine these witnesses. We must determine if the test results and Dr. Kelly's proposed testimony constitute "testimonial" hearsay under *Crawford*, thereby triggering Moss's right to confront the absent witnesses. We begin our analysis by considering whether the blood test results constitute hearsay and, even if hearsay, whether Dr. Kelly may testify to the results under Arizona Rule of Evidence 703.

¶ 12 Prior to *Crawford*, our supreme court stated that the Confrontation Clause is inapplicable to non-hearsay evidence. *State v. Rogovich*, 188 Ariz. 38, 42, 932 P.2d 794, 798 (1997). The State, citing *Rogovich*, contends that test results are not hearsay because they are relied upon by an expert as foundation for his opinion and "are admissible for the limited purpose of showing the basis of that opinion, not to prove the truth of the matter asserted." *Id.* at 42, 932 P.2d at 798. "Testimony not admitted to prove the truth of the matter asserted by an out-of-court declarant is not hearsay." *Id.* Similarly, the Supreme Court in *Crawford* noted that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the

---

4. *See also* Ariz. Const. art. 2, § 24 ("[i]n criminal prosecutions the accused shall have the right . . . to meet the witnesses against him face-to-face").

5. The Court further explained:
> We have no doubt that the courts below were acting in utmost good faith when they found reliability. The Framers, however, would not

have been content to indulge this assumption. *They knew that judges, like other government officers, could not always be trusted to safeguard the rights of the people. . . . They were loath to leave too much discretion in judicial hands.*
>
> *Id.* at 67, 124 S.Ct. 1354 (emphasis added).

matter asserted." 541 U.S. at 59 n. 9, 124 S.Ct. 1354.

¶ 13 Under Rule 703 of the Arizona Rules of Evidence, a testifying expert may testify to the facts or data underlying his opinion for the limited purpose "of showing the bases of that opinion, not to prove the truth of the matter asserted."[6] *State v. Lundstrom*, 161 Ariz. 141, 148, 776 P.2d 1067, 1074 (1989). In regard to facts or data relied upon by an expert witness under Rule 703, our supreme court has explained that "the defendant's confrontation right extends to the testifying expert witness, not to those who do not testify but whose findings or research merely form the basis for the witness's testimony." *Rogovich*, 188 Ariz. at 42, 932 P.2d at 798.

¶ 14 Based on these principles, the State asks us to reverse the trial court's exclusion of Dr. Kelly's testimony regarding the blood test results and his opinions based thereon. Perhaps recognizing that the written test report constitutes hearsay, the State does not intend to offer the report. *See State ex rel. McDougall v. Johnson*, 181 Ariz. 404, 409, 891 P.2d 871, 876 (App.1994) (holding that private laboratory's breath test report showing alcohol concentration constituted hearsay). Instead, the State contends that under *Rogovich* and Rule 703, Dr. Kelly may testify to the test results and may explain his reliance on the results in support of his expert opinion that Moss was impaired by drugs at the time of the accident. According to the State, the test results are not being offered for their truth, but merely to explain part of the basis for Dr. Kelly's opinions. We disagree with the State's position, however, based both on pre-*Crawford* pronouncements of the Arizona Supreme Court and on *Crawford* itself.

¶ 15 The trial court found that Dr. Kelly's proposed testimony would convey to the jury the actual blood test results, even though the report would not be admitted. Cognizant of "dangers lurking" in potential applications of Rule 703, our supreme court has warned that the admissibility of "facts or data" relied on by an expert is not absolute, and is subject to the weighing required by Arizona Rule of Evidence 403 of the probative value against the unfair prejudice that may arise from such disclosure. *Lundstrom*, 161 Ariz. at 148, 776 P.2d at 1074. Also, the official Comment accompanying the adoption of Rule 703 reveals that the rule was not intended to authorize the admission of facts or data that "should be excluded pursuant to an applicable constitutional provision, statute, rule or decision."[7] Our supreme court has also emphasized that if the expert "merely acts as a conduit for another non-testifying expert's opinion, the 'expert opinion' is hearsay and is inadmissible, Rule 703 notwithstanding." *Lundstrom*, 161 Ariz. at 148, 776 P.2d at 1074; *see also Rogovich*, 188 Ariz. at 42 n. 1, 932 P.2d at 798 n. 1.

¶ 16 Whether an expert is merely acting as a conduit for another non-testifying expert's

---

**6.** Ariz. R. Evid. 703 provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

**7.** The Comment to Rule 703 provides in pertinent part:

This rule, along with others in this article, is designed to expedite the reception of expert testimony. Caution is urged in its use. Particular attention is called to the Advisory Committee's Note to the Federal Rules of Evidence which accompanies Federal Rule 703. In addition, it should be emphasized that the standard "if of a type reasonably relied upon by experts in the particular field" is applicable to both sentences of the rule. The question of whether the facts or data are of a type reasonably relied upon by experts is in all instances a question of law to be resolved by the court prior to the admission of the evidence. If the facts or data meet this standard and form the basis of admissible opinion evidence they become admissible under this rule for the limited purpose of disclosing the basis for the opinion *unless they should be excluded pursuant to an applicable constitutional provision*, statute, rule or decision.

Ariz. R. Evid. 703 cmt. (emphasis added); *see also* David H. Kaye et al., *The New Wigmore: Expert Evidence* § 3.7.1, at 34 (Supp.2007) ("The comment accompanying Rule 703 in Arizona, for example, interprets Rule 703 as a rule of admissibility for basis evidence but still restricts disclosure of constitutionally prohibited evidence").

opinion is necessarily a fact-specific inquiry. In this case, the State acknowledged that it intended to offer Dr. Kelly in part to "testify in lieu of those who actually performed the chemical analysis." Therefore, to the extent that Dr. Kelly's testimony would act simply as a conduit for the blood test analysis performed by the absent criminalists, his testimony would consist of inadmissible hearsay, Rule 703 notwithstanding. *See id.*

¶ 17 Additionally, courts must consider the impact of the proposed testimony on the jury. *See* Ariz. R. Evid. 403. As the likelihood increases that the jury will consider the evidence for its truth rather than for the limited purpose for which it is being offered, the core concerns protected by the Confrontation Clause must be scrutinized more carefully. When the jury will be required to consider whether the defendant was under the influence of drugs at the time of an event, it is likely that the jury will depend on the blood test results for their truth. The blood test results may be the most persuasive evidence that Moss had drugs in his system. Even if Dr. Kelly relied only *in part* on the blood test results for his opinion that Moss was impaired by drugs, we believe it would be difficult to prevent the jury from considering the blood test results as key evidence of Moss's impairment, even assuming a limiting instruction is given. *See U.S. v. Reyes,* 18 F.3d 65, 71–72 (2d Cir.1994) (although courts ordinarily assume jurors will follow limiting instructions, if an out-of-court declaration has no probative value other than for its truth, an instruction that the jurors should not use the declaration for its truth is unlikely to be followed); *see also* 1 Joseph M. Livermore et al., *Arizona* Practice Law of Evidence § 105.1, at 28 (4th ed. 2000) ("The giving of a limiting instruction under Rule 105 should not automatically

eliminate Rule 403 concerns—if only because one must have serious doubts, at least, about the ability of jurors to follow such an instruction.") (emphasis added).

■ ¶ 18 The trial court had discretion to determine under these facts that the test results would likely be considered by the jury as conclusions of the non-testifying criminalists who performed the analysis, thereby potentially triggering Moss's confrontation rights. If proposed out-of-court statements will probably be considered by the jury for the truth of the matters stated therein, the evidence should be considered the functional equivalent of hearsay for Confrontation Clause purposes even though it might traditionally be considered as facts or data relied upon by an expert under Rule 703. *See Crawford,* 541 U.S. at 50–51, 124 S.Ct. 1354 ("Accordingly, we once again reject the view that the Confrontation Clause applies of its own force only to in-court testimony, and that its application to out-of-court statements introduced at trial depends upon 'the law of Evidence for the time being.' Leaving the regulation of out-of-court statements to the law of evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices.") (citations omitted); *Reyes,* 18 F.3d at 69 (explaining that "when the likelihood is sufficiently high that the jury will not follow the limiting instructions [to avoid consideration of out-of-court declarations as proof of the truth of what was said], but will treat the evidence as proof of the truth of the declaration, the evidence is functionally indistinguishable from hearsay").[8]

¶ 19 For these reasons, we conclude that the proposed testimony of Dr. Kelly contains significant elements of hearsay and the func-

---

8. We note that some authorities have concluded in light of *Crawford* that facts or data offered to explain the basis of an expert's opinion should be considered hearsay even though the evidence is not, in a traditional sense, offered to prove the truth of the matters stated therein. *See People v. Goldstein,* 6 N.Y.3d 119, 810 N.Y.S.2d 100, 843 N.E.2d 727, 732–33 (2005) (explaining that the "distinction between a statement offered for its truth and a statement offered to shed light on an expert's opinion is not meaningful in this context" and holding that the evidence relied upon

by the expert was hearsay); Kaye et al., *The New Wigmore: Expert Evidence* § 3.10.1, at 40 ("The factually implausible, formalist claim that experts' basis testimony is being introduced only to help in the evaluation of the expert's conclusions but not for its truth ought not permit an end-run around a constitutional prohibition."). While these principles are supportive of the result we reach in this appeal, we do not base our decision on them because they are inconsistent with pre-*Crawford* statements of the Arizona Supreme Court.

tional equivalent of hearsay for Confrontation Clause purposes. The trial court was therefore correct in applying Confrontation Clause analysis to the proposed testimony. The next question is whether Dr. Kelly's testimony regarding the blood test results and his opinions based thereon would be "testimonial" under *Crawford.*

¶ 20 In *Crawford,* the Supreme Court held that "testimonial" hearsay statements of an unavailable declarant would not be admitted in a criminal trial unless the defendant had cross-examined the declarant. *See* 541 U.S. at 68, 124 S.Ct. 1354. Although the Supreme Court declined to provide a comprehensive list of the categories of statements that are "testimonial," the Court explained that the Confrontation Clause applies to "witnesses" against the accused who "bear testimony." *Id.* at 51, 124 S.Ct. 1354. The Court described "testimony" as a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* (quoting Noah Webster, An American Dictionary of the English Language (2d ed. 1828)). "An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.* The Court also identified a "core class" of testimonial statements, including *"ex parte* in-court testimony or its functional equivalent" such as "affidavits, custodial examinations, [or] prior testimony," and "similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Id.*

¶ 21 We conclude that the proposed testimony of Dr. Kelly reporting Moss's blood test results would constitute testimonial evidence within the meaning of *Crawford.* The criminalists who performed the blood tests and interpreted the results surely expected their statements of the results to be used prosecutorially. That was the primary reason for analyzing the blood. The testimony by Dr. Kelly reporting the results would be, in essence, an accusation by the absent criminalists that Moss had ingested methamphetamine before the accident. Therefore, Dr. Kelly's proposed evidence is testimonial

under *Crawford,* triggering the protections of the Confrontation Clause.

¶ 22 Our conclusion is supported by several recent decisions from other jurisdictions. *See, e.g., Johnson v. State,* 929 So.2d 4, 7 (Fla.Dist.Ct.App.2005) (holding that lab report establishing illegal nature of substance possessed by defendant was testimonial hearsay); *Las Vegas v. Walsh,* 121 Nev. 899, 124 P.3d 203, 207–08 (2005) (holding that nurse's affidavit regarding withdrawal of blood sample for chemical analysis in DUI case is testimonial); *People v. Rogers,* 8 A.D.3d 888, 891, 780 N.Y.S.2d 393 (N.Y.App.Div.2004) (holding that blood test report was testimonial hearsay); *State v. Crager,* 164 Ohio App.3d 816, 844 N.E.2d 390, 394–400, ¶¶ 19–51 (2005) (review granted Apr. 26, 2006) (holding that DNA analyst's report was testimonial hearsay and second analyst was not entitled to testify to report's conclusions); *but see State v. Dedman,* 136 N.M. 561, 102 P.3d 628, 636, ¶ 30 (2004) (holding that blood alcohol report was not testimonial hearsay because it was prepared in routine, non-adversarial manner and did not resemble prior testimony or police interrogation).

¶ 23 Nor are we persuaded that Dr. Kelly's testimony regarding the results of blood tests performed by non-testifying criminalists would fall within any exception to the requirements of the Confrontation Clause simply because the written report might qualify as a business record. The Supreme Court suggested in dicta in *Crawford* that business records are non-testimonial. *See* 541 U.S. at 56, 124 S.Ct. 1354. Courts have thereafter differed on whether particular laboratory reports should be considered non-testimonial simply because they are business or public records. *Compare Bohsancurt v. Eisenberg,* 212 Ariz. 182, 189–91, ¶¶ 25–35, 129 P.3d 471, 478–80 (App.2006) (holding that quality assurance and calibration records of breath-testing device were non-testimonial business records not subject to the Confrontation Clause) *and Commonwealth v. Verde,* 444 Mass. 279, 827 N.E.2d 701, 705–06 (2005) (holding that laboratory report of analysis of cocaine fell within a business or public records exception to the Confrontation Clause well established under Massachusetts law

and noted in *Crawford)* *with Crager,* 844 N.E.2d at 397–98, ¶¶ 33–41 (declining to adopt a broad rule exempting business records from Confrontation Clause rights). As *Crawford* emphasized, however, the application of the Confrontation Clause is not controlled by state evidence law. 541 U.S. at 50–51, 124 S.Ct. 1354. Here, the key question is whether the proffered testimony of Dr. Kelly regarding the test results would be testimonial under *Crawford.* We agree with the trial court: the answer is yes. *See supra* ¶¶ 18–22.

¶ 24 The State also argues that the laboratory analysis of Moss's blood was "neither discretionary nor based on opinion" and on appeal, however, contains no evidence addressing the actual testing methodology, its scientific foundation, the background and qualifications of the criminalists, or the amount of expertise and subjective judgment involved in the process. Based on this sparse record and in light of *Crawford,* we do not find this argument of the State to be persuasive.

¶ 25 The protection of the Confrontation Clause may, as here, predominate over Rule 703 admissibility of facts or data relied on by an expert. The admissibility of such facts or data has historically been based on a judicial determination that the evidence is "of a type reasonably relied upon by experts in the particular field" and therefore reliable. *See* Ariz. R. Evid. 703. Because the Supreme Court in *Crawford* rejected judicially-determined reliability in favor of actual confrontation, *see supra* ¶ 10, facts and data relied upon by experts may be subject to challenge, on a case-by-case basis, under the Confrontation Clause.[9]

### III.

■ ¶ 26 Confrontation rights are not violated when the out-of-court declarant testifies at trial and is subject to cross-examination. *Crawford,* 541 U.S. at 59 n. 9, 124 S.Ct. 1354. Here, however, the criminalists who tested the drug content of Moss's blood were unavailable to testify at trial and would not be subject to cross-examination. On this record, the trial court did not abuse its discretion in its factual determinations and did not err in its legal conclusions. We therefore affirm the order precluding the testimony of Dr. Kelly regarding the blood test results and his opinions based thereon.

CONCURRING: PATRICIA A. OROZCO, Judge.

KESSLER, Judge, specially concurring.

¶ 1 I concur in the result, but not necessarily the reasoning, of the majority. I would not reach the constitutional issue because Dr. Kelly's testimony, to the extent it is based upon the lab results, would be inadmissible as a "conduit for another non-testifying expert's opinion". *State v. Lundstrom,* 161 Ariz. 141, 148, 776 P.2d 1067, 1074 (1989). In this case, the State did not preserve the record of the contents of the lab results by

---

9. We are not suggesting that experts may no longer rely on facts or data that are hearsay. The key question now in Confrontation Clause analysis is whether the proposed evidence is testimonial. As the authors of one leading evidence treatise explain:

> Often, the hearsay basis for an expert's testimony will not be testimonial under any reasonable definition of the term. When a doctor relies on other medical records made in the course of treatment, or an appraiser relies on comparable sales, or an expert in gang structure relies on interviews conducted with former gang members over many years and not related to the particular case, no plausible understanding of "testimonial" would encompass these statements. However, there will be times when part of an expert's basis is testimonial. A psychiatrist's opinion about sanity could depend in part on statements made by people to the police about the defendant's behavior; or, in a criminal case arising from a vehicular accident, an accident reconstruction expert might base his opinion partly on affidavits made by witnesses to the authorities. The situation is similar when a gang expert relies on statements made by suspects under interrogation, or when one forensic scientist relies on the laboratory results of another, or when a medical or forensic report written by someone other than the testifying witness is introduced into evidence, or when, pursuant to statute, expert information (such as a breathalyzer test or an analysis of the composition of a drug) is introduced without any witness at all. In such cases, the Confrontation Clause could bar disclosure of this evidence.

Kaye et al., *The New Wigmore: Expert Evidence* § 3.10, at 38–39.

filing a copy of those results with the superior court. We must therefore assume that the lab results are the opinions of a nontestifying expert and to that extent, Dr. Kelly's testimony based on the results would merely be a conduit for those opinions. *See State v. Printz*, 125 Ariz. 300, 304, 609 P.2d 570, 574 (1980) (if appellant fails to ensure that evidence at issue is part of record on appeal, court will presume missing portions of the record support the action of the trial court).