**UNITED STATES**

v.

**Senior Airman Joshua C. BLAZIER,
United States Air Force.**

**ACM 36988.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 22 Nov. 2006.

8 Sept. 2008.

Appellate Counsel for the Appellant: Lieutenant Colonel Mark R. Strickland, Major John Fredland, and Captain Lance J. Wood.

Appellate Counsel for the United States: Colonel Gerald R. Bruce, Major Donna S. Rueppell, and Major Roberto Ramirez.

Before BRAND, Senior Judge, FRANCIS, and JACKSON, Appellate Military Judges.

## OPINION OF THE COURT

BRAND, Senior Judge:

Contrary to his pleas, the appellant was convicted by a panel of officers of negligent dereliction of duty,[1] and wrongful use of ecstasy, methamphetamine, and marijuana, in violation of Articles 92 and 112a, UCMJ, 10 U.S.C. §§ 892, 912a. The approved sentence consists of a bad-conduct discharge, 45 days of confinement, and reduction to E–3.[2] On appeal, the appellant asserts that the military judge erred in admitting hearsay and, in so doing, violated his right to confrontation under the Sixth Amendment.[3] Finding no error, we affirm.

*Background*

On 5 June 2006, the appellant was randomly selected to provide a urine sample. His sample was collected, shipped to the Air Force Institute for Occupational Health (AFIOH), and tested positive for ecstasy and methamphetamine. On 10 July 2006, the Air Force Office of Special Investigations (AFOSI) questioned the appellant. The appellant agreed to talk with the AFOSI and consented to another urinalysis. This sample was collected, shipped to AFIOH, and tested positive for marijuana.

At trial, the defense counsel made a motion in limine to suppress the drug testing results from both urinalyses. The military judge made detailed findings of fact and conclusions of law, denied the motion, found the appellant's urinalysis test results were non-testimonial, and admitted the results under the "business records" exception to the hearsay rule. It is this ruling the appellant challenges on appeal.

*Discussion*

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." U.S.

---

1. The military judge previously granted a Rule for Courts-martial 917 motion as to the willful dereliction of duty.

2. Mandatory forfeitures were deferred and waived.

3. U.S. CONST. amend VI.

CONST. amend. VI. The Confrontation Clause bars the admission of testimonial statements of a witness who did not appear at trial unless the witness was unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). *Crawford* established "various formulations of the core class of testimonial statements, formulations that may provide a useful baseline to assist in determining whether statements are testimonial or non-testimonial." *Crawford*, 541 U.S. at 51, 124 S.Ct. 1354. The three general categories of testimonial statements under *Crawford* are: (1) ex parte in-court testimony or its functional equivalent; (2) extrajudicial statements such as affidavits, depositions, prior testimony, and confessions; and (3) statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at trial. *Id.*

However, *Crawford* failed to articulate a comprehensive definition of the term "testimonial". *See United States v. Gardinier*, 65 M.J. 60, 65 (C.A.A.F.2007) (quoting *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)). To fill that gap, the *Davis* court enunciated a "primary purpose" test for determining whether statements are testimonial or non-testimonial. *Davis*, 547 U.S. at 822, 126 S.Ct. 2266. A statement is testimonial when its "primary purpose ... is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* Courts must look objectively at the totality of the circumstances surrounding the statement "to determine if the statement was made or elicited to preserve past facts for a criminal trial." *Gardinier*, 65 M.J. at 65. (*See also United States v. Harcrow*, 66 M.J. 154, 158 (C.A.A.F.2008)). Statements may become testimonial where the appellant is under investigation and the testing was initiated by the prosecution to discover incriminating evidence. *Harcrow*, 66 M.J. at 159. (*See also United States v. Rankin*, 64 M.J. 348, 351–52 (C.A.A.F.2007)).

We review a military judge's ruling regarding the admissibility of evidence for an abuse of discretion. *United States v. Datz,* 61 M.J. 37, 42 (C.A.A.F.2005) (citing *United States v. Johnson,* 46 M.J. 8, 10 (C.A.A.F. 1997)). Under an abuse of discretion review, we examine a military judge's findings of fact using a clearly erroneous standard, and examine conclusions of law de novo. *United States v. Larson,* 66 M.J. 212, 215 (C.A.A.F. 2008). We consider the evidence in the light most favorable to the prevailing party. *Id.* Whether the appellant's urinalysis test results constitute inadmissible hearsay under *Crawford* is a question of law that we review de novo. *Harcrow,* 66 M.J. at 158 (citing *Gardinier,* 65 M.J. at 65).

In *United States v. Magyari,* 63 M.J. 123, 124 (C.A.A.F.2006), our superior court addressed the issue of random urinalysis testing results and found the results to be non-testimonial. We note the only discernable difference between the two samples, in this case, is that the test on 5 June 2006 was a random urinalysis, while the one on 10 July 2006 was conducted pursuant to consent by the appellant. Although the July urinalysis was obtained by the AFOSI (a law enforcement agency) with the consent of the appellant, the analysis of the statements by the laboratory technicians doesn't change. An objective look at the totality of the circumstances indicates that the "statements" (in this instance the drug testing results) involved nothing more than a routine and objective cataloging of unambiguous factual matters. *Harcrow,* 66 M.J. at 158.

Each of the appellant's urine specimens was sent to the same laboratory, stored in the same secured area, and assigned a unique laboratory accession number (LAN). The LAN was the sole identifier for each individual specimen and the laboratory testing officials were blind to the name of the specimen donor, how the sample was acquired and by whom it was acquired. Each specimen had aliquots prepared for testing and each sample was tested in a batch which included 199 other samples. The batches contained samples belonging to individuals, blind quality controls, and internal quality controls. There is no evidence that any of the technicians testing the samples had any reason to, or were under any pressure to, produce a certain result or that they were

aware that particular results would be used in a future prosecution. The appellant's samples were routinely screened and tested along with thousands of other specimens that were routinely screened and tested. *See Magyari,* 63 M.J. at 127.

Under these circumstances, the military judge did not abuse his discretion with respect to his ruling on the admissibility of the appellant's drug testing results from the samples collected on 5 June 2006 and 10 July 2006. Such test results were non-testimonial statements properly admitted as "business records." Mil. R. Evid. 803(6) and 902(11).

### Conclusion

The findings and the sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Reed,* 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the findings and sentence are

AFFIRMED.

JACKSON, Judge (concurring in part, dissenting in part):

While I concur with the majority's findings with respect to the appellant's 5 June 2006 urinalysis test report, I respectfully dissent from its findings on the appellant's 10 July 2006 urinalysis test report. Axiomatically, the statements in question are the laboratory technicians' statements contained in the appellant's 10 July 2006 urinalysis test report. The questions to address are whether these statements are testimonial [4] and, if so, whether the military judge abused his discretion in admitting these statements at the appellant's court-martial.

The majority, in answering these questions, focuses solely on the perspectives of the laboratory technicians, hereinafter the declarants, and gives little analysis to the purpose of the request to consent to the 10 July 2006 urinalysis test. It is this approach with which I must depart company. The majority finds the statements to be non-testimonial because there is no evidence that

the declarants had reason to, or were under any pressure to, produce a certain result or that they were aware that the appellant's results would be used in a future prosecution. While the declarants' neutrality is relevant, it is by no means the sole consideration in resolving this issue. The government's purpose, or lack thereof, in securing the declarants' statements is of equal consideration.

First, the Supreme Court, in addressing this issue, enunciated a "primary purpose" test and highlighted that a statement is testimonial when its "primary purpose ... is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington,* 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). Second, at least one jurisdiction rejects an approach that makes the declarant's perspective dispositive on this issue. *State v. Caulfield,* 722 N.W.2d 304, 309 (Minn.2006). *Caulfield* is instructive and persuasive in that it highlights a concern with the majority's approach—an approach that focuses solely on the declarants' neutrality and does not give adequate consideration to *Crawford*'s fear of governmental abuses. *Id.* Put simply, in resolving this issue, the government's purpose for securing the declarants' statements is just as important, if not more important, as the declarants' neutrality.

The primary purpose of the declarants' statements was "to establish or prove past events potentially relevant to later criminal prosecution" (*See Davis,* 547 U.S. at 822, 126 S.Ct. 2266), namely to assist the prosecution in meeting its burden of proving the appellant used marijuana. The fact that the statements: (1) were requested by a law enforcement agency, the AFOSI, (albeit with the appellant's consent); (2) were requested at a time while the AFOSI was investigating the appellant for drug use and the possession of marijuana paraphernalia; and (3) were used by the prosecution to prove the appellant used marijuana, belie any notion that the statements were obtained for non-prosecuto-

---

**4.** Admittedly reasonable minds may differ on whether forensic laboratory reports are testimonial. The United States Supreme Court recently granted certiorari to resolve this issue. *See Melendez–Diaz v. Massachusetts,* 552 U.S. 1256, 128 S.Ct. 1647, 170 L.Ed.2d 352 (2008).

rial purposes.[5] Additionally, the fact that the declarants were unaware of the identity of the requester or the basis for the request is of little consequence in determining the purpose of the declarants' statements.

Moreover, the report and the declarants' statements contained therein bear all the characteristics of an ex parte affidavit, the trial use of which is the principle evil at which the Confrontation Clause was directed. *Crawford v. Washington*, 541 U.S. 36, 67, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The report and the declarants' statements: (1) were prepared at the request of the AFOSI for the potential prosecution of the appellant; (2) functioned as the equivalent of testimony on the identification of the substance (tetrahydrocannabinol) found in the appellant's urine; and (3) were offered at trial specifically to prove an element of a crime with which the appellant was charged.

Finally, as our superior court notes, cross-examination may be appropriate where an individual is accused of a crime and law enforcement conducts and seeks to admit the results of bodily fluid test at trial. *See United States v. Magyari*, 63 M.J. 123, 127 (C.A.A.F.2006) (citing *People v. Rogers*, 8 A.D.3d 888, 780 N.Y.S.2d 393, 397 (N.Y.App. Div.2004)) for the notion that cross-examination may be appropriate where a particular defendant is accused of rape and law enforcement conducts and seeks to admit the results from a blood or DNA test. In the case *sub judice*, cross-examination of the declarants was appropriate, especially considering the AFOSI's role in obtaining the appellant's 10 July 2006 urinalysis test report.

Accordingly, under the "primary purpose test" enunciated under *Davis*, the ex parte affidavit "test" enunciated under *Crawford*, and the guidance under *Magyari*, I would find the declarants' statements to be testimonial, the admission of which was an abuse of discretion. Moreover, since this error involves the appellant's Sixth Amendment[6] right to confront witnesses, I would test this error for its effect upon the trial to determine whether the error was harmless beyond a reasonable doubt. *United States v. Othuru*, 65 M.J. 375, 378 (C.A.A.F.2007).

The declarants' statements were the only evidence the prosecution had on the wrongful use of marijuana specification and, though there was little evidence contradicting the declarants' statements, I am convinced, absent these statements, the court members would not have found the appellant guilty of the wrongful use of marijuana specification. In recognition of such, I would set aside the findings of guilt on Specification 3 of Charge I and reassess the sentence. For these reasons, I must respectfully dissent.

---

5. Unlike urinalysis reports prepared for random urinalyses, reports that are generated primarily for the preservation of good order and discipline via general and specific deterrence, urinalysis reports prepared for consent and probable cause urinalysis are generated primarily to obtain evidence, e.g. evidence of drug use that may be relevant at courts-martial.

6. U.S. CONST. amend VI.