# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

### No. ACM 38846

_____

### UNITED STATES
*Appellee*

v.

### Matthew C. HUDSON
Captain, U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 9 January 2017

_____

*Military Judge:* Jill M. Thomas (arraignment) and Brendon K. Tukey.

*Approved sentence:* Dismissal. Sentence adjudged 26 March 2015 by GCM convened at Travis Air Force Base, California.

*For Appellant:* Major Michael A. Schrama, USAF.

*For Appellee:* Major Jeremy D. Gehman, USAF; and Gerald R. Bruce, Esquire.

Before DREW, J. BROWN, and MINK, *Appellate Military Judges*

Chief Judge DREW delivered the opinion of the court, in which Senior Judge BROWN and Judge MINK joined.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

_____

DREW, Chief Judge:

A general court-martial composed of officer members convicted Appellant, contrary to his plea, of divers wrongful use of marijuana, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. The adjudged and approved sentence was a dismissal.

On appeal, Appellant raises two issues: (1) whether the evidence is legally and factually sufficient;[*] and (2) whether Appellant's right to confrontation was violated when laboratory personnel who tested his urine sample did not testify.

## I. BACKGROUND

On 15 August 2014, Appellant provided a urine sample after he was randomly selected by the Drug Demand Reduction Office on Travis Air Force Base, California. The sample was tested at the Air Force Drug Testing Laboratory (AFDTL) on Lackland Air Force Base, Texas. The results of that testing showed the presence of marijuana's tetrahydrocannabinol (THC) metabolite in Appellant's urine at a level of 67 nanograms per milliliter (ng/mL). The Department of Defense (DoD) cutoff for THC is 15 ng/mL. On 3 September 2014, after the results of his first test were reported back to Travis Air Force Base, Appellant provided a second urine sample for follow-up inspection. *See United States v. Bickel*, 30 M.J. 277 (C.M.A. 1990). The results of the second testing showed the presence of THC in Appellant's urine at a level of 39 ng/mL.

At Appellant's trial, the trial counsel offered redacted excerpts of AFDTL's drug testing reports for both of his samples. In both cases, the excerpts consisted of chain of custody documents and machine-generated data, graphs, and printouts of the testing of Appellant's and associated other samples, including blind and open quality controls. Neither report included a cover memorandum or any other formal, affidavit-like certification of the results. Trial defense counsel did not object to either Prosecution Exhibit 9 (the redacted report for the 15 August sample) or Prosecution Exhibit 10 (the redacted report for the 3 September sample) and the military judge admitted them.

Trial counsel presented the testimony of Dr. Naresh Jain, a forensic toxicologist and expert in the fields of forensic toxicology, forensic chemistry, pharmacology, and drug testing. Trial defense counsel did not object to the court recognizing Dr. Jain as an expert in those fields, nor did defense counsel object, on any grounds, to any of Dr. Jain's testimony.

Dr. Jain testified during direct and cross-examination about the Department of Defense's drug testing program and his consulting role in helping establish the AFDTL, and he walked the members through Prosecution Exhibits 9 and 10. Dr. Jain explained the meaning of the machine-generated data in the reports and described the testing equipment and procedures used by AFDTL. He gave his independent expert opinion that the tests were conducted in a forensically sound and acceptable manner by trained and competent personnel, in a forensically secure laboratory, with good quality assurance by using their own internal open and blind quality control samples. Dr. Jain testified that, in his opinion, the results of the two tests indicated that the THC metabolite was present in both of

---

[*] Appellant's error is characterized as "whether there is ample evidence in the record other than the permissive inference to support a conviction in this case." We analyzed the error as raising both legal and factual sufficiency.

Appellant's samples, that Appellant must have used marijuana before he provided each sample, and that Appellant must have used marijuana at least once after he provided his first sample and before he provided his second one. Dr. Jain also testified that he could not say whether Appellant smoked, ate, or drank, products containing THC, nor could he say exactly how much THC was in the products he consumed.

Appellant testified in his defense that he did not knowingly use marijuana and did not knowingly ingest anything that contained marijuana. On cross-examination, when asked about the urinalysis test results, Appellant responded to the trial counsel's questions as follows:

> Q. Now, we talked about that you provided that first specimen on 15 August 2014, right?
>
> A. Yes.
>
> Q. Now, you have been able to look at all the results, like we have seen here today, and that the members have been able to look at the last few days, correct?
>
> A. Correct.
>
> Q. And you have heard all the testimony, correct?
>
> A. Correct.
>
> Q. All right, any reason to doubt that THC was actually in your system on 15 August 2014, hearing all the testimony?
>
> A. No, there is no reason to doubt that.
>
> Q. And then you were brought in on 3 September, after your leave, and you were informed that you tested positive—that was the first time you were informed that you tested positive?
>
> A. Correct.
>
> Q. And same thing, you looked at the documents. You have seen the evidence that has been presented here at trial; is there any reason to doubt that THC was in your system, same thing, on 3 September 2014?
>
> A. No reason to doubt it.

After the close of evidence on findings, the military judge held an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session with the parties outside the members' presence to discuss his proposed findings instructions. The military judge asked Appellant's counsel if he had any objections to the draft instructions and defense counsel responded, "No objections, sir." The military judge asked defense counsel if he requested any additional instructions and he responded, "No, sir." Finally, the military judge had the following colloquy with counsel:

MJ: Very well. Now, normally in the script it has me ask you if you guys object to the instructions after I give them to the members. It doesn't make a lot of sense to me since I've already given the instructions to the members, so I do not intend to ask that question again, so now really is the speak now or forever hold your peace portion of the trial in that regard. . . .

. . . .

MJ: Defense counsel, do you have anything else to take up before we call the members for instructions?

DC: No, sir.

The military judge's findings instructions included the following:

Knowledge by the accused of the presence of the substance and knowledge of its contraband nature may be inferred from the surrounding circumstances. You may infer from the presence of THC in the accused's urine that the accused knew he used marijuana. However, the drawing of any inference is not required.

The accused may not be convicted of the use of a controlled substance if the accused did not know he was actually using the substance. The accused's use of the controlled substance must be knowing and conscious. For example, if a person places a controlled substance into the accused's drink, food, or cigarette without the accused's becoming aware of the substance's presence, then the accused's use was not knowing and conscious.

It is not necessary that the accused be aware of the exact identity of the contraband substance. The knowledge requirement is satisfied if the accused knew the substance was prohibited. Similarly, if the accused believes the substance to be a contraband substance, such as cocaine, when in fact it is heroin, the accused had sufficient knowledge to satisfy that element of the offense.

A contraband substance is one that is illegal to use. However, a person who uses cocaine, but actually believes it to be sugar, would not be guilty of wrongful use.

I have instructed you that the accused must have known that the substance he used was marijuana or of a contraband nature. You may not find the accused guilty of this offense unless you believe beyond a reasonable doubt that the accused actually knew that he used marijuana or a substance of a contraband nature.

. . . .

4

Proof of knowledge, willfulness and intent by circumstantial evidence – you have been instructed that, with regard to certain of the elements of the offenses listed for you above, the government must prove the accused's knowledge, willfulness and intent beyond a reasonable doubt.

Direct evidence of knowledge, willfulness and intent is often unavailable. The accused's knowledge, willfulness and intent, however, may be proved by circumstantial evidence. In deciding this issue, you must consider all relevant facts and circumstances.

Immediately after trial counsel gave his findings argument, the military judge gave the following supplemental instruction: "I think the trial counsel just misspoke and he corrected himself immediately, but he used the word 'presumed' and again, just to remind you, you may infer from the presence of THC in the accused's urine that the accused knew he used marijuana, but whether or not you draw that inference is entirely up to you."

## II. DISCUSSION

### A. Legal and Factual Sufficiency—Permissive Inference.

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002); *see United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990). Our assessment of legal and factual sufficiency is limited to the evidence presented at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [this court is] convinced of the [Appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987); *see United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000).

The test for legal sufficiency requires courts to review the evidence in the light most favorable to the government. If any rational trier of fact could have found essential elements of the crime beyond a reasonable doubt, the evidence is legally sufficient. *Reed*, 51 M.J. at 41 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) and *Turner*, 25 M.J. 324 (C.M.A. 1987)); *see also United States v. Humphreys*, 57 M.J. 83, 94 (C.A.A.F. 2002). The term "reasonable doubt" does not mean that the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

On appeal, Appellant argues that use of the permissive inference is not alone sufficient to prove the knowledge element in this case. He relies on *Cnty. Court v. Allen*, 442 U.S. 140, 160 (1979), for the proposition that there must be "ample evidence" other than the permissive inference to sustain a conviction. However, Appellant does not contend that the military judge's instruction on the permissive inference was error and, in any event, his failure to object to the instruction at trial constitutes forfeiture, in the absence of plain error. *See*

R.C.M. 920(f). Appellant looks to *United States v. Ford*, 23 M.J. 331 (C.M.A. 1987), for the proposition that this court must conduct a case-specific analysis of the facts to determine whether the permissive inference was properly applied.

In *Ford*, decided nearly 30 years ago, the Court of Appeals for the Armed Forces (CAAF) noted that:

> This Court has previously held that evidence of urinalysis tests, their results, and expert testimony explaining them is sufficient to show beyond a reasonable doubt that an accused used marihuana. We also have recognized that military law for over 35 years has provided that a permissive inference of wrongfulness may be drawn from such a circumstantial showing of marihuana use.

23 M.J. at 332. Accordingly, admission of such evidence in this case was sufficient as a matter of law to permit Appellant's conviction for wrongful use of marijuana. *United States v. Bond*, 46 M.J. 86, 89 (C.A.A.F. 1997).

As far as factual sufficiency, Appellant's case has some limited similarity with *Ford*, in that the appellant there also took the stand and denied knowingly using marijuana during the charged time frame. However, unlike the instant case, in *Ford* the appellant was charged with only a single wrongful use of marijuana and he suggested the forensic laboratory had made a mistake. Here, Appellant conceded that the lab correctly identified that THC was present in both of his samples. In addition, in *Ford* the appellant posited that his estranged wife had motive, opportunity, and access to marijuana, in order to place marijuana in his food without his knowledge.

In the face of the conflicting evidence in *Ford*, the CAAF stated:

> [W]hether to draw an inference of wrongfulness is a question to be decided by the factfinder using the standard of reasonable doubt. It *may* be drawn where no contrary evidence is admitted. However, if the prosecution fails to persuade the factfinder beyond a reasonable doubt that this inference should be drawn, a finding of not guilty is required. Similarly, the inference of wrongfulness *may* be drawn where contrary evidence is admitted. However, if the prosecution fails to persuade the factfinder beyond a reasonable doubt that this contrary evidence should be disbelieved or that the inference should be drawn, a finding of not guilty is required.

*Ford*, 23 M.J. at 335 (emphasis in original).

We find that there is sufficient evidence to convince a rational trier of fact beyond a reasonable doubt that the Appellant is guilty of wrongful use of marijuana, and that the evidence is, therefore, legally sufficient. Furthermore, weighing all the evidence admitted at trial and mindful of the fact that we did not see or hear the witnesses, this court is convinced beyond a reasonable doubt that the Appellant is guilty of the divers wrongful use of marijuana.

**B. Confrontation of Laboratory Personnel.**

Appellant relies upon *United States v. Katso*, 74 M.J. 273, 278–79 (C.A.A.F. 2015) for the proposition that the testimony of Dr. Jain violated his Sixth Amendment right to confrontation. Appellant suggests that Dr. Jain was a mere conduit for testimonial hearsay because he did not personally conduct any of the tests in question. Whether evidence is testimonial hearsay is a question of law reviewed de novo. *Id.* at 278.

At trial, Appellant conceded Dr. Jain's relevant expertise, did not object to any of his testimony, and did not object to the admission of either drug testing report on *any* basis. The reports had been modified in accordance with case law allowing for the admission of a drug testing report. *See Bullcoming v. New Mexico*, 564 U.S. 647 (2011); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009); *Crawford v. Washington*, 541 U.S. 36 (2004); *Katso*, 74 M.J. at 273; *United States v. Tearman*, 72 M.J. 54 (C.A.A.F. 2013); *United States v. Sweeney*, 70 M.J. 296 (C.A.A.F. 2011); *United States v. Blazier (Blazier II)*, 69 M.J. 218 (C.A.A.F. 2010); *United States v. Blazier (Blazier I)*, 68 M.J. 439 (C.A.A.F. 2010); *United States v. Magyari*, 63 M.J. 123 (C.A.A.F. 2006). Neither of the reports contained any testimonial hearsay.

While Dr. Jain was not employed by the AFDTL and did not conduct any of the tests in this case, he was very well informed about the lab's testing procedures generally and was highly qualified to review, interpret, and explain to the members the drug testing reports. Indeed, his independence from the AFDTL enhanced his objectivity as a Government expert witness. In addition to offering no objection to Dr. Jain's testimony, Appellant never requested the testimony of any laboratory personnel or raised any issues with the military judge regarding the Defense's access to them. Dr. Jain limited his testimony to explaining the meaning of the drug testing reports and the science behind them, describing the internal and external means to control the quality of the AFDTL's testing and reporting procedures, and giving his opinion, based on his decades of experience, that THC above the DoD cutoff existed in both of Appellant's samples and that their presence at their respective levels indicated at least two separate uses.

The Government points this court to *United States v. Harcrow*, 66 M.J. 154 (C.A.A.F. 2008), and urges us to declare that Appellant waived his right to confrontation. Unlike the situation facing the appellant in *Harcrow*, the Supreme Court's *Crawford* opinion and those of the other cases cited above were well known to trial practitioners. Accordingly, the Government contends that trial defense counsel's affirmative lack of objection when asked by the military judge if they had an objection to the admission of the drug testing reports would act as an intentional relinquishment of a known right or privilege, hence waiver on appeal. We need not address waiver in this case as, unlike *Harcrow*, there was no testimonial hearsay in either of the reports or in Dr. Jain's testimony. Even if there had been, and its admission amounted to constitutional error, Appellant's concession under oath that THC was found at the indicated level in his urine samples conclusively establishes that any such error was harmless beyond a reasonable doubt and did not violate a substantial right of Appellant.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of Court