ROTHENBERG, J.
The defendant, Reginald Johnson, appeals his convictions and sentences for two counts of sexual battery with a deadly weapon, one count of kidnapping without a firearm, and one count of lewd and lascivious molestation of a child between the ages of twelve and sixteen, raising two issues. The defendant challenges the State’s introduction at trial of the rape treatment kit containing his DNA and of the report documenting the collection of the evidence containing the defendant’s DNA from the victim. The defendant also alleges that because the physician who collected and prepared the report describing the collection of the evidence from the victim was not present for cross-examination at trial, introduction of the report violated the defendant’s Sixth Amendment right to confront his accuser. For the reasons detailed below, we find that the report and the rape treatment kit were properly authenticated, admission of the report did not violate the defendant’s Sixth Amendment rights, and the trial court did not err in allowing the State to introduce either the rape treatment kit or Dr. Silla’s *1240 report into evidence at trial. However, as to the defendant’s second issue, we find that, because this record does not evidence a separate act to support the conviction for lewd and lascivious molestation in addition to those for aggravated sexual battery, the defendant’s conviction for lewd and lascivious molestation violates double jeopardy. Accordingly, we reverse his conviction for lewd and lascivious molestation, and remand with instructions to the trial court to vacate the conviction and sentence for lewd and lascivious molestation and to correct the judgment accordingly.

BACKGROUND

On December 19, 2000, fourteen-year-old C.A. was abducted by a male, who then drove her to a vacant lot, forced her to engage in oral and vaginal sex, and stole her money. Detective Steven Signori, who conducted the ensuing investigation, met C.A. and her mother at the rape treatment center where Dr. Silla performed a forensic gynecological examination and collected biologic specimens from C.A. as part of the routine post-rape examination. Dr. Silla wrote a report documenting his examination and provided Detective Signori with a sealed brown bag containing the biologic specimens that he had collected during the examination.
The case remained unsolved until eight years later when Detective Signori received a lead identifying the defendant as C.A.’s assailant. At first, when interviewed by Detective Signori, the defendant denied knowing C.A., but when he was told that DNA evidence linked him to C.A., the defendant said that he may have dated her at one time. After the interview, a saliva sample was collected from the defendant and it was sent to the police laboratory to be analyzed. Sharon Hinz, who performed the analysis on the specimens contained in the rape treatment kit, analyzed the defendant’s saliva sample and determined that the DNA from the defendant’s saliva matched the biologic specimens submitted in C.A.’s 2000 rape treatment kit. The defendant was arrested and charged with two counts of armed sexual battery, one count of armed robbery, one count of armed kidnapping, two counts of armed lewd and lascivious molestation of a child between the ages of twelve and sixteen, and one count of possession of a firearm by a convicted felon. The counts for armed robbery and possession of a firearm were dismissed on statute of limitations grounds, and the case proceeded to trial on the remaining charges.
At trial, the State provided testimony by Detective Signori, who had received the rape treatment kit from Dr. Silla in 2000 and who had interviewed the defendant and obtained the defendant’s saliva sample in 2008; Nurse Valerie Carter, who had assisted Dr. Silla in his examination of C.A. and who had initialed Dr. Silla’s report; Sharon Hinz, who had conducted the DNA analysis on the items contained in C.A.’s rape treatment kit and on the defendant’s saliva in 2008; and Dr. Karen Simmons, the medical director at the rape treatment center where C.A. was examined, and who reviewed all of the reports created at the center and trained the physicians and nurses regarding how to obtain and package samples collected during the examinations performed at the rape treatment center.
Detective Signori testified about his investigation of the case. He explained that he met C.A. and her mother at the rape treatment center, he received the sealed biologic samples from Dr. Silla, and he delivered them to the police laboratory for testing. The detective also provided testimony regarding his interview with the defendant and the collection of the saliva sample from the defendant in 2008.
*1241 Sharon Hinz testified that she tested the vaginal swabs contained in C.A.’s rape treatment kit shortly after they had been collected, and that she found evidence of semen on those swabs. Ms. Hinz further testified that when she tested the defendant’s saliva, which was collected in 2008, the DNA analysis revealed that the defendant’s DNA matched the DNA found on the vaginal swabs contained in C.A.’s rape treatment kit.
Dr. Karen Simmons, who was the medical director of the rape treatment center at the time that Dr. Silla examined C.A., testified that she had trained all of the physicians and nurses at the center to insure that all procedures, including collection and packaging of biologic samples, were performed in the same way. Dr. Simmons also testified that the reports were similarly produced in a standardized manner whereby each report was witnessed by a nurse attending the examination and signed by the detective receiving the specimen. Dr. Simmons verified that Dr. Silla’s report complied with the standard procedures and did not evidence any signs of tampering.
Nurse Carter testified that she had assisted in approximately two to three hundred examinations at the rape treatment center. She also described the standard protocol for obtaining, labeling, and packaging the biologic samples collected during the examinations. Nurse Carter both verified Dr. Silla’s and her own signature on the two-page report of C.A.’s examination and testified that while she could not remember the specific case, her signature on the report evidenced that she had been present during C.A.’s examination. Nurse Carter identified the rape treatment kit and confirmed that the initials on the packet containing the vaginal swabs were Dr. Silla’s.
The defense counsel argued that because Dr. Silla, who collected the biologic samples from the victim and wrote the report documenting the examination, would not be available at trial to testify, the DNA analysis and report were inadmissible since the State could not establish that the biologic specimens analyzed by the forensic analyst, Sharon Hinz, were indeed those collected from C.A. Defense counsel also objected to Nurse Carter’s testimony based on Dr. Silla’s report as inadmissible hearsay. Lastly, defense counsel objected to the introduction of Dr. Silla’s report as a business record on the grounds that Nurse Carter was not a record custodian, the report constituted testimonial hearsay, and its introduction violated the defendant’s confrontation rights under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The trial court overruled defense counsel’s objections, Nurse Carter was allowed to proceed with her testimony, and the report was entered into evidence as a business record.
The jury found the defendant guilty of two counts of sexual battery with a deadly weapon and one count each of kidnapping without a firearm and of lewd and lascivious molestation of a child between the ages of twelve and sixteen. The trial court sentenced the defendant to two consecutive life sentences on the sexual battery and kidnapping charges, and to thirty years on the lewd and lascivious molestation charge. This appeal followed.

ANALYSIS

I. Admissibility of the DNA evidence and of Dr. Silla’s Report
A trial court’s ruling on the admissibility of evidence is subject to review for an abuse of discretion. Johnston v. State, 863 So.2d 271, 278 (Fla.2003). Therefore, absent a finding that the trial court abused *1242 its discretion, the appellate court will not disturb the trial court’s admission of evidence. Id.
The defendant claims that the trial court erred in admitting the DNA analysis and Dr. Silla’s report into evidence because: (1) the evidence was not properly authenticated by the physician who collected the biologic evidence from the victim during her gynecological examination at the rape treatment center; (2) Dr. Silla’s report documenting his examination of the victim and collection of the DNA evidence constituted testimonial hearsay and was not admissible as a business record; and (3) introduction of the report without providing the defendant with an opportunity to cross-examine Dr. Silla at trial, violated the defendant’s Sixth Amendment confrontation rights under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). We disagree, and hold that: (1) the evidence was sufficiently authenticated; (2) Dr. Silla’s report was properly admitted as a business record; and (3) introduction of the DNA evidence and Dr. Silla’s report did not deprive the defendant of his confrontation rights.
A. Authentication and Admissibility as a Business Record
With regard to the defendant’s argument on the authentication of Dr. Silla’s report and its admissibility as a business record, we find that the report was sufficiently authenticated by the testimony of Nurse Carter and Dr. Simmons and it was properly admitted as a business record exception to the hearsay rule. Because the authentication and business record issues are intertwined and involve overlapping discussion we address them jointly below.
Authentication is a condition precedent to the admission of evidence. § 90.901, Fla. Stat. (2010). The party seeking to satisfy the authentication requirement must provide “evidence sufficient to support a finding that the matter in question is what its proponent claims.” Id. Moreover, while hearsay evidence is generally inadmissible, there are certain exceptions to this rule. Section 90.803, Florida Statutes (2010), specifies the type of hearsay evidence that may be admitted regardless of the availability of its declarant. One such exception, the business record exception, provides as follows:
(6) RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY.
(a) A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all as shown by the testimony of the customary custodian or other qualified witness, or as shown by a certification or declaration that complies with paragraph (c) and s. 90.902(11), unless the sources of information or other circumstances show lack of trustworthiness. The term “business” as used in this paragraph includes a business, institution, association, profession, occupation, and calling of very kind, whether or not conducted for profit.
§ 90.803(6), Fla. Stat. (2010).
Courts have further limited the admissibility of certain business records, however, and have determined that while a testimonial report may possess indicia of a business record, it may not be admissible under the business record exception. State v. Johnson, 982 So.2d 672, 676-81 (Fla.2008) (listing and discussing cases providing indicia of testimonial reports). In do *1243 ing so, the Florida Supreme Court has drawn a distinction between those records prepared and kept in the regular course of business and those records “prepared and kept at the request of law enforcement agencies and for the purpose of criminal prosecution.” Johnson, 982 So.2d at 677-78. Accordingly, the Court, in Johnson, determined that a laboratory report prepared at the Florida Department of Law Enforcement (“FDLE”) laboratory for the sole purpose of criminal prosecution was not admissible as a business record because it implicated the Sixth Amendment right to confrontation. Id. at 677-78. In addition to the fact that the report was not prepared at a hospital, other considerations which factored into the Court’s determination included the fact that the witness who was made available for cross-examination about the report was unable to answer questions “concerning chain of custody, methods of scientific testing, and analytical procedures.” Johnson, 982 So.2d at 677 (citing Rivera v. State, 917 So.2d 210, 212 (Fla. 5th DCA 2005)). The Florida Supreme Court held that admission of the report would impinge on the defendant’s confrontation rights because the witness could not testify about those areas of inquiry. Johnson, 982 So.2d at 681.
The defendant’s reliance on Johnson, however, is misplaced because Johnson is distinguishable. For example, unlike in Johnson, Dr. Silla’s report was prepared at a hospital, not at a law enforcement lab. Moreover, while arguably made for the principal purpose of assisting law enforcement and for a criminal trial, and the report is testimonial in nature, any testimonial aspect of Dr. Silla’s report only relates to the collection of the specimen from the victim. The report makes no statement, conclusion, or accusation about or against the defendant. Most importantly, however, while the person who wrote the report did not testify, Nurse Carter, who was present during the gynecological examination of and the collection of evidence from C.A., also witnessed the information documented in the report, signed off on the report, and was available for cross-examination. Furthermore, unlike in Johnson, the chain of custody was clearly established by Detective Signori, who received the rape treatment kit containing the report and the specimen from Dr. Sil-la, and by Sharon Hinz, the technician who actually performed the DNA testing of the items contained in the rape treatment kit and the saliva taken from the defendant and concluded that the DNA collected from the defendant and contained in the rape treatment kit matched. Both Detective Signori and Ms. Hinz testified that when they received the evidence envelope containing the vaginal swabs taken during C.A.’s examination, the envelope was sealed and showed no signs of tampering.
Unlike Johnson, Feneher v. State, 931 So.2d 184 (Fla. 5th DCA 2006), is directly on point and supports the trial court’s ruling in this case. In Feneher, as in this case, the defendant challenged the admission of a rape treatment kit into evidence because the nurse who had collected the samples contained in the kit did not testify at trial. Fencher, 981 So.2d at 185. There, as here, the sexual assault victim was accompanied by the police detective to a medical center for examination where biologic samples were collected, packaged in a sealed and signed kit, and given to the detective, who took the kit for testing to the police laboratory. Fencher, 931 So.2d at 185-86. Although Nurse Dickman, who had actually collected the samples did not testify at Fencher’s trial, another nurse at the center, Nurse Hanson, detailed the protocol at the center for the collection and preservation of biologic samples, explained that she had personally *1244 participated in the collection of these types of samples, and testified that she had seen hundreds of rape treatment kits generated by Nurse Dickman. Nurse Hanson verified Nurse Dickman’s handwriting on the rape treatment kit and confirmed that the kit did not show any signs of tampering. Fencher, 931 So.2d at 186. Additionally, the detective who had accompanied the victim to the center and received and delivered the rape treatment kit to the police laboratory, and the laboratory technician who had performed the DNA analysis, both testified that the package containing the sample had been sealed on delivery and showed no evidence of tampering. Id. The laboratory technician also described the tests that he had performed and the process by which he had determined that the DNA in the rape treatment kit matched that collected from Fencher. Fencher, 931 So.2d at 186-87. In admitting the report under the business record exception to the hearsay rule, the Fifth District found that Nurse Hanson’s testimony satisfied the requirements for admission set forth in Florida Rule of Evidence 90.803(6)(a). Fencher, 931 So.2d at 186.
We agree with the Fencher court’s analysis and holding on the authentication and admissibility issue and we similarly find that the testimony by Nurse Carter, who assisted Dr. Silla in his examination and collection of evidence from C.A., sufficiently authenticated the evidence and supported the introduction of Dr. Silla’s report as a business record exception to the hearsay rule. Nurse Carter, like Nurse Hanson in Fencher, identified and verified the signature of the person collecting the evidence and creating the report. Moreover, Nurse Carter explained that her initials on the report evidenced that she had actually been present at C.A.’s examination by Dr. Silla. Nurse Carter described the standard procedures followed for each examination conducted at the rape treatment center, including how the biologic evidence was obtained, labeled, packaged, and provided to the detectives. Her testimony was supplemented by that of the director of the rape treatment facility, Dr. Karen Simmons, who also described the standardized procedures used to obtain, label, package, and deliver the biologic evidence from rape victims at the rape treatment center. Any chain of custody issues were further eliminated by Detective Signori’s testimony that, like the detective in Fencher, he had accompanied the victim to the rape treatment center, waited while she was examined, received the sealed evidence directly from the person who had collected it, and submitted it to the police department for testing.
This cumulative testimony presented by the State was more than sufficient to authenticate the DNA evidence from the rape treatment kit, which was found to match the DNA collected from the defendant eight years later, and to establish that it was collected by Dr. Silla from C.A. during his examination of C.A. at the rape treatment center. We, therefore, agree with the trial court and find that Dr. Silla’s report, like the blood test report in Fencher, was properly admitted as a business record exception to the hearsay rule.
B. Sixth Amendment Implication
We turn now to the defendant’s Sixth Amendment argument challenging the admission of Dr. Silla’s report into evidence. Here, we also agree with the trial court and find that the admission of the report did not violate the defendant’s confrontation rights.
First and foremost, we note that the cases cited by the defendant to support his Sixth Amendment argument are inapposite and do not apply to the instant case. *1245 Those cases, tellingly, evidence the fatal flaw in the defendant’s Sixth Amendment argument. See, e.g., Belvin v. State, 922 So.2d 1046, 1054 (Fla. 4th DCA 2006) (holding that admission of a breath test affidavit without providing the defendant with the opportunity to cross-examine the technician who performed the test violated the defendant’s confrontation rights); Johnson v. State, 929 So.2d 4, 8 (Fla. 2d DCA 2005) (holding that admission of a lab test identifying a substance found on the defendant as cocaine without providing the defendant with the opportunity to question the law enforcement officer who actually performed the lab tests violated the defendant’s confrontation rights).
Notably, in those cases the confrontation right was placed at issue because the per: son actually performing the test was absent and unavailable for cross-examination at trial. In sharp contrast, in our case, unlike in Johnson and Belvin, the person who actually performed the DNA test, Sharon Hinz, testified and was cross-examined by defense counsel at trial. Moreover, Nurse Carter, who was present and assisted Dr. Silla in his examination and his collection of the evidence, also signed the report documenting the events, and she also testified and was cross-examined by defense counsel at trial. We therefore find that, because the defendant had an ample opportunity to confront and question Nurse Carter and Ms. Hinz at trial, his Sixth Amendment rights were not violated by the admission of Dr. Silla’s report.
II. Double Jeopardy
On the double jeopardy issue, however, we agree with the defendant and find that this record does not support a lewd and lascivious molestation conviction in addition to and separate from the sexual battery convictions. Because the record does not evidence, nor does the State identify, any act by the defendant that could serve as a basis for a separate conviction for lewd and lascivious molestation, the defendant’s conviction for lewd and lascivious molestation violates double jeopardy. We, therefore, reverse the conviction for lewd and lascivious molestation and remand with instructions to the trial court to vacate the conviction and sentence for lewd and lascivious molestation and to correct the judgment accordingly.
Affirmed in part, reversed in part, and remanded.