NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

NORA COLEEN MOWERS, *Appellant.*

No. 1 CA-CR 19-0431
FILED 4-8-2021

---

Appeal from the Superior Court in Maricopa County
No. CR2015-125783-001
The Honorable Julie A. LaFave, Judge *Pro Tempore*

**VACATED AND REMANDED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael F. Valenzuela
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Joel M. Glynn
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge David B. Gass delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Michael J. Brown joined.

---

**G A S S**, Judge:

¶1 Nora Coleen Mowers appeals her convictions for aggravated driving under the influence (DUI). Mowers correctly argues the superior court improperly allowed the results of a breathalyzer test into evidence. Because the State did not meet its burden of showing the error was harmless, we vacate both convictions and remand for further proceedings.

## FACTUAL AND PROCEDURAL HISTORY

¶2 In June 2015, Officer Timothy Mazich responded to a two-vehicle collision in Phoenix. When Mazich arrived, he found B.S. "standing right at the accident scene in the roadway by the two vehicles." After asking B.S. to identify the driver of each vehicle, Mazich spoke to Mowers, who was standing near a retaining wall on the side of the road. Mowers said she was driving out of "the Walmart parking lot to make a left turn [when] she was struck by a vehicle that was coming northbound." Mazich also spoke with D.M., the second driver. The physical evidence and D.M.'s explanation of the accident corroborated Mowers's version of the events.

¶3 Mazich then asked Mowers for her driver's license. Mowers initially said her license was in the vehicle and provided Mazich with her name and date of birth. Mazich performed a record check but could not locate a valid driver's license matching the information Mowers provided. After several additional attempts to verify the information, Mazich asked Mowers "to be honest" with him. Mowers then said her driver's license "had been revoked."

¶4 As Mazich approached Mowers to place her under arrest, he "smelled an odor of alcohol coming from her breath." Mazich asked Mowers if she had been drinking, and she admitted to drinking four beers. Mazich then called Officer Florin Bohatir to assist with a DUI investigation. Bohatir also noted the smell of alcohol coming from Mowers and asked if she would consent to a field sobriety test. Though Mowers agreed, she

appeared to have injured her ankle in the collision, making her a "medical rule-out." Bohatir, therefore, performed a horizontal gaze nystagmus (HGN) test instead of the standard field sobriety tests. HGN is a neurological dysfunction causing involuntary twitching of the eye and can be caused by alcohol consumption. Mowers demonstrated six cues during the test, indicating a BAC greater than 0.08. Bohatir then arrested Mowers and transported her to a police substation for DUI processing.

¶5          At the substation, Mowers consented to an alcohol-breath test conducted by Officer Michael Chase. Chase began by asking Mowers a few biographical questions and explaining her *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Throughout Chase's interaction with Mowers, he noted her "eyes were watery and bloodshot" and she smelled of alcohol. Chase performed two statutorily-required, alcohol-breath tests on Mowers using an Intoxilyzer 8000. *See* A.R.S. § 28-1323.A.3. The first test showed Mowers's BAC was 0.221, the second showed a result of 0.215.

¶6          The State charged Mowers with driving while under the influence of an intoxicating liquor and impaired to the slightest degree (the impaired charge) and driving with a blood-alcohol concentration (BAC) above 0.08 (the BAC charge). *See* A.R.S. § 28-1381.A.1–.2. The State also alleged Mowers committed the offenses while her "privilege to drive [was] suspended, canceled, revoked or refused." *See* A.R.S. § 28-1383.A.1.

¶7          On the first day of trial, the State called Chase to testify about Mowers's breath-test results. Chase described his training and experience, including his certification to operate an Intoxilyzer 8000. He explained how "the machine checks itself" with a known substance and does "a couple air blanks to make sure everything's flushed out" before and after each subject test "[t]o make sure it's a fair and accurate test." When the test is complete, the Intoxilyzer 8000 prints two copies of a "ticker tape" showing the results of the self-check and subject tests along with a notification of whether the tests were successfully completed. Chase then told the jury the procedure he followed when administering the test to Mowers, including the use of an approved operational checklist. Chase never said whether the machine completed the self-check or displayed the successful completion message.

¶8          To lay foundation for Mowers's breath-test results, the State showed Chase two exhibits. The first (Exhibit 4) was a photocopy of the Intoxilyzer 8000 "ticker tape" printout from Mowers's breath tests. Because Exhibit 4 was largely illegible, the State next showed Chase Exhibit 5, a later "reprint" showing Mowers's breath-test results and the machine's self-

calibration checks. When the State asked Chase for the specific results shown on Exhibit 5, Mowers objected.

¶9 Mowers argued Exhibit 5 lacked the statutorily-required certification language, making it inadmissible. *See* A.R.S. § 28-1327.B. Without Exhibit 5, Mowers argued, the State had not met the foundational requirements to admit her breath-test results. *See* A.R.S. § 28-1323.A. The superior court sustained Mowers's objection but said the State could use Exhibit 5 to refresh Chase's recollection. Without attempting to refresh Chase's recollection, the State asked him for the breath-test results, and he answered.

¶10 After the superior court excused the jury for the day, Mowers renewed her objection to Chase's testimony about the breath-test results. Specifically, she argued the exclusion of Exhibit 5 meant the State had no proof the machine used in her test was operating correctly and "it was improper for [Chase] to talk about the results before all of [the foundational requirements] have been met." Further, "because the results [had] been improperly admitted," Mowers moved for a mistrial.

¶11 The superior court denied the motion, specifically finding "the State has met the requirements of 28-1323 for the purpose of the testimony regarding the results all the way, 1 through 5." Accordingly, Chase could testify about the breath-test results, but Exhibit 5 would "not be sent to the jury" unless the State provided "the appropriate certification under [§ 28-]1327." The State never provided the certification.

¶12 The following day, the State called Donald Stenberg, a toxicologist with the Phoenix Crime Lab. Stenberg said the crime lab is responsible for maintaining the Intoxilyzer 8000 machines. When asked how often the machines are checked, he said: "There's -- I believe I said it's a 30- to 31-day check. So, if it's not checked every 31 days, the instrument will lock out. There's also a 90-day check that's supposed to be done on it as well." Later, when asked about the Intoxilyzer 8000's calibration and potential margin of error, Stenberg responded: "That's something that you'd have to ask the people who calibrate the instrument. That's not me." Stenberg never discussed the maintenance or calibration of the specific Intoxilyzer 8000 used to test Mowers.

¶13 At the conclusion of the State's case-in-chief, Mowers moved for acquittal under Rule 20 of the Arizona Rules of Criminal Procedure. The superior court denied the motion, and the jury found Mowers guilty on both counts. Mowers then filed a renewed Rule 20 motion. Following

arguments, the superior court again denied Mowers's motion. The superior court sentenced Mowers to concurrent four-month terms of imprisonment for each count, with one-day presentence incarceration credit, and two-years' supervised probation following her release from prison.

**¶14** Mowers timely appealed. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, A.R.S. §§ 13-4031, and 13-4033.A.1.

## ANALYSIS

I. **The superior court abused its discretion when it allowed Chase to testify about the breath-test results.**

**¶15** Mowers argues the superior court abused its discretion by allowing Chase to testify about her breath-test results when the State had not met the statutory foundational requirements. Specifically, Mowers argues the superior court erred in admitting the test results because the State failed to establish the Intoxilyzer 8000 "used to conduct [her] test was in proper operating condition." *See* A.R.S. § 28-1323.A.5. We agree.

**¶16** This court analyzes statutory requirements *de novo* but reviews the facts established at trial in the light most favorable to sustaining the verdicts. *State v. Cope*, 241 Ariz. 323, 324, ¶ 5 (App. 2016); *State v. Felix*, 237 Ariz. 280, 283, ¶ 2 (App. 2015). A superior court abuses its discretion when its reasoning is legally incorrect, clearly untenable, or otherwise a denial of justice. *State v. Penney*, 229 Ariz. 32, 34, ¶ 8 (App. 2012).

**¶17** "A proponent of a breath test . . . can offer the test into evidence by utilizing either the statutory method, established in section 28-[1323] or the rules of evidence method, governed primarily by Rule 702, Arizona Rules of Evidence." *State ex rel. McDougall v. Johnson*, 181 Ariz. 404, 407 (App. 1994) (citing the predecessor statute to § 28-1323). When a party seeks to admit breath-test results "without testimony from an expert witness, *the requirements of the statute must be scrupulously met* so that there will be a uniform, statewide basis of testing to vouch for accuracy and reliability." *Id.* at 408 (emphasis original; quotation omitted).

**¶18** Subsection 28-1323.A lists five foundational elements for the admission of breath-test results. Mowers admits the State satisfied the first four requirements. Her argument centers on the fifth, which requires the proponent to establish:

*The device used to conduct the test was in proper operating condition.* Records of periodic maintenance that show that the device was in proper operating condition are admissible in any proceeding as prima facie evidence that the device was in proper operating condition at the time of the test. *Calibration checks with a standard alcohol concentration solution bracketing each person's duplicate breath test are one type of records of periodic maintenance that satisfies the requirements of this section.* The records are public records.

A.R.S. § 28-1323.A.5 (emphasis added).

**¶19**        To satisfy subsection 28-1323.A.5, the State sought to admit Exhibit 5, which shows "each individual subject test . . . bracketed by calibration checks and error blanks." But Exhibit 5 was not admitted. And though the superior court said Chase could "testify as to what [Exhibit 5] is if it supports and reflects his recollection of the test and whatever he put in his report," Chase gave no such testimony. Instead, following discussion of Mowers's objection, the State simply asked Chase "what were the results [of Mowers's breath test]?"

**¶20**        On appeal, the State argues "Chase *would have* laid foundation for Exhibit 5 under the rules of evidence." (Emphasis added.) According to the State, because Chase "possessed the knowledge to testify that Exhibit 5 was what the State claimed it to be," the superior court should have allowed Exhibit 5 into evidence. *See* Ariz. R. Evid. 901(b)(1). Citing *State v. Dawson*, Mowers argues we lack jurisdiction to hear the State's argument because it did not file a cross-appeal. *See* 164 Ariz. 278, 282 (1990) ("the [S]tate's failure to timely appeal or cross-appeal acts as a jurisdictional bar to its raising the error in defendant's appeal"). The State, also citing *Dawson*, argues it need not cross-appeal here because it seeks only to uphold Mowers's convictions and sentences. *See id.* ("cross-assignment of error in the absence of a cross-appeal can be considered only in support of the judgment") (quoting *State v. Condry*, 114 Ariz. 499, 501 (1977)).

**¶21**        We need not resolve the jurisdictional issue because the record "reveals that the trial court's decision was right, although for the wrong reason." *See id.* (citation omitted). Subsection 28-1327.B does not prohibit the State from introducing Exhibit 5 through generally applicable rules of evidence. But the State never asked Chase the proper foundational questions. To be sure, Chase did testify in general terms about the self-calibration process an Intoxilyzer 8000 completes with each examination. Yet he never said whether the specific machine used to test Mowers

completed that process or whether the machine displayed a successful completion message after he tested Mowers.

¶22 Further, on cross-examination Chase was unable to say how frequently the machine underwent "periodic maintenance," going on to disclaim *any* involvement "in the maintenance of that instrument." The testimony from Stenberg, the State's toxicology witness, was similarly unhelpful on this point. He too spoke in general terms of Intoxilyzer 8000 maintenance but denied involvement in the specific machine's calibration. *Cf. State v. White*, 155 Ariz. 452, 457–58 (App. 1987) (admitting breath-test results after officer "testified that he conducted calibration checks on the machine"). On this record, the superior court correctly excluded Exhibit 5.

¶23 Put simply, despite ample opportunity, the State introduced no evidence establishing the specific Intoxilyzer 8000 used to test Mowers "was in proper operating condition." *See* A.R.S. § 28-1323.A.5. Allowing Chase to testify about Mowers's breath-test results, therefore, was an abuse of discretion. *See Johnson*, 181 Ariz. at 408 (requiring scrupulous compliance with statutory requirements).

**II. The error in admitting the breath-test results was not harmless.**

¶24 This court reviews improperly admitted evidence for harmless error. *See State v. Bolton*, 182 Ariz. 290, 303 (1995). Under harmless error review, the question "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993) (emphasis original). Here, the State has not met its burden "of convincing us that [this] error was harmless." *See State v. Anthony*, 218 Ariz. 439, 446, ¶ 39 (2008).

¶25 The impaired charge required the State to prove—in part—Mowers was under the influence of intoxicating liquor and impaired to the slightest degree. *See* A.R.S. § 28-1381.A.1. To prove Mowers was impaired, the State called Stenberg, who told the jury "all persons regardless of tolerance are impaired to operate a motor vehicle at a .08 [BAC]." In its closing argument, the State drew a clear connection between the breath-test results and Mowers's potential impairment, telling the jury "she was impaired to the slightest degree at the time of driving *by virtue of being over a .08* as you heard by -- heard from Donald Stenberg." (Emphasis added.)

¶26 Regarding the BAC charge, the State needed to prove—in part—Mowers had a BAC of 0.08 or more within two hours of driving. *See* A.R.S. § 28-1381.A.2. Here again, the State relied on Stenberg, who

7

performed a "retrograde extrapolation" using Mowers's breath-test results to show her BAC was greater than 0.08 within two hours of the collision. Because the State needed the test results to prove the 0.08 BAC element of the offense, a jury could not convict Mowers without them. *See id.*

**¶27**     In short, because we cannot sever the impact of the breath-test results on the jury for both charges, we are not "satisfied beyond a reasonable doubt that the error did not impact the verdict." *See State v. Bass*, 198 Ariz. 571, 580, ¶ 39 (2000). We, therefore, must vacate both convictions.

### III.     The superior court did not abuse its discretion when it allowed Mazich to testify about Mowers's incriminating statements.

**¶28**     Mowers also argues the superior court erred when it allowed Mazich to testify that Mowers admitted to driving at the time of the accident, to consuming four beers before driving, and knowing her driving privileges had been revoked. Mowers specifically argues the State failed to present sufficient evidence beyond her own words as required by the *corpus delicti* doctrine. Because the improper admission of evidence at trial is dispositive, we need not address her *corpus delicti* argument. We, however, choose to address it to avoid confusion on remand. *See Nayeri v. Mohave County*, 247 Ariz. 490, 494, ¶ 15 (App. 2019).

**¶29**     "The *corpus delicti* doctrine ensures that a defendant's conviction is not based upon an uncorroborated confession or incriminating statement." *State v. Morris*, 215 Ariz. 324, 333, ¶ 34 (2007) (italics added). The doctrine requires, "as a condition of the admissibility of a defendant's incriminating statements, the State present evidence independent of the statements sufficient to raise a reasonable inference" the crime charged actually occurred. *State v. Barragan-Sierra*, 219 Ariz. 276, 281, ¶ 12 (App. 2008). Under this doctrine, "[o]nly a reasonable inference of the *corpus delicti* need exist before a confession may be considered, and circumstantial evidence suffices to support the inference." *State v. Carlson*, 237 Ariz. 381, 387, ¶ 8 (2015) (quotation omitted). Here, the State met its burden.

**¶30**     Mowers's first statement, explaining she was driving and how the collision occurred, was corroborated by the physical evidence and the explanation of the accident by D.M., the second driver. As the State rightly notes: "To the extent that a factual question existed on whether Mowers or [B.S.] had driven the car, it was not an issue of *corpus delicti* but a factual issue to be decided by the jury." Mowers's second statement, that she "had four beers," was corroborated by her HGN test results and the smell of alcohol noted by Mazich, Bohatir, and Chase. Finally, the

suspension of her driving privileges was corroborated by the absence of any driver's license in Arizona, her having a non-operator identification, and Mazich's understanding Mowers's privileges had been revoked several times in Illinois.

**¶31** Aside from Mowers's confession, the above constitutes independent corroborating evidence the crimes charged occurred. *See Barragan-Sierra*, 219 Ariz. at 281, ¶ 12. The superior court, therefore, did not abuse its discretion in admitting Mowers's incriminating statements.

## CONCLUSION

**¶32** We vacate Mowers's convictions and remand the matter to the superior court for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:    AA